UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID RHODES

                                 Petitioner,

                                                  9:13-CV-00057

v.

                                                    (FJS/TWD)

M. SHEAHAN,

                                 Respondent.
_____

APPEARANCES:                          OF COUNSEL:

DAVID RHODES
07-A-3657
Petitioner pro se
Greenhaven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN         PRISCILLA I. STEWARD, ESQ.
Attorney General for the State of New York    LISA E. FLEISCHMANN, ESQ.
Counsel for Respondent                Assistant Attorneys General
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

## I.    INTRODUCTION

Petitioner David Rhodes' pro se Petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 has been referred to this Court for Report and Recommendation, pursuant to 28

U.S.C. § 636(b) and Northern District Local Rule 72.3(c), by the Hon. Frederick J. Scullin,

Senior United States District Judge.  As a threshold matter, Respondent seeks to have the Petition

denied and dismissed on statute of limitation grounds.  (Dkt. No. 21.)  For reasons explained

herein, the Court recommends that the petition be denied and dismissed as time-barred.

## II.     BACKGROUND

### A.     State Court Conviction and Sentencing

Petitioner was convicted of rape in the first degree (Penal Law §130.35(1)) and rape in

the third degree (Penal Law § 130.25(3)) on April 20, 2007, following a jury trial in Ulster

County Court, the Hon. J. Michael Bruhn, County Court Judge, presiding.  (Dkt. No. 11 at 765[1].)

On June 26, 2007, Petitioner was sentenced to a term of incarceration of twenty-five years

followed by five years post-release supervision on the charge of rape in the first degree, and an

indeterminate term of incarceration with a minimum of two years and maximum of four years on

the charge of rape in the third degree.  *Id*. at 810.

### B.     Petitioner's Direct Appeal

On April 21, 2011, on Petitioner's counseled direct appeal, the Appellate Division Third

Department ("Appellate Division") unanimously affirmed the June 26, 2007, judgment of

conviction against Petitioner on the rape in the first degree and rape in the third degree charges.

*See People v. Rhodes*, 921 N.Y.S.2d 405, 406 (3d Dep't 2011).  The Appellate Division, Malone,

Jr., J., denied Petitioner's counseled motion pursuant to N.Y. Criminal Procedure Law ("CPL")

§ 460.20 for permission to appeal to the Court of Appeals on July 21, 2011.[2]  (Dkt. No. 12-7 at

---

[1]  Page references to documents identified by docket number are to the numbers assigned
by the CM/ECF docketing system maintained by the Clerk's Office.

[2]  CPL § 460.20(2)(a), which deals with certificates granting leave to appeal to the Court
of Appeals in criminal matters, provides that "[w]here the appeal sought is from an order of the
appellate division, the certificate may be issued by (i) a judge of the court of appeals or (ii) a
justice of the appellate division of the department which entered the order sought to be
appealed."  If the application is denied by a justice of the Appellate Division or a judge of the
Court of Appeals, no other application is permitted to either.  *See People v. Nelson*, 447

3.)  Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court. (Dkt. No. 1 at 3.)  Petitioner's conviction became final upon the expiration of the ninety day period allowed to seek certiorari.

### C.    Petitioner's Motion to Vacate his Conviction Pursuant to CPL § 440.10

Petitioner filed a pro se motion to vacate his conviction under CPL § 440.10 on August 19, 2010, before his direct appeal was decided by the Appellate Division.  (Dkt. No. 12-8 at 9-10.)  Petitioner's § 440.10 motion was denied by the Hon. Anthony McGinty, Acting Ulster County Court Judge, on May 11, 2011, on the grounds that the issues raised in the motion could have and should have been raised on direct appeal as there were sufficient facts in the record. (Dkt. No. 21-1 at 12.)  Judge McGinty's Order was entered on May 11, 2011.  *Id*. at 3.  A copy of the Decision and Order with Notice of Entry was served by mail on Petitioner on June 20, 2011. *Id*. at 1-2.

Respondent has asserted in his Supplemental Memorandum of Law that Petitioner did not seek leave to appeal the denial of his § 440.10 motion to the Appellate Division.  (Dkt. No. 21 at 3.)  In his opposition to Respondent's claim that his habeas petition is time-barred, Petitioner claimed that he was going through his papers trying to find his application to appeal his § 440.10 motion because "he did, in fact, seek leave of denial of his CPL § 440.10 motion."  (Dkt. No. 31 at 15.)

Petitioner's Traverse includes a July 23, 2011, Notice of Appeal from Judge McGinty's May 11, 2011, Order, under CPL § 460.15.  (Dkt. No. 31-3 at 2.)  The Notice of Appeal indicates that copies were sent to the Ulster County District Attorney and the Ulster County Court Clerk.

N.Y.S.2d 155 (1981) (Mem).

3

*Id.* There is no affidavit or certificate of service on the District Attorney. Petitioner's Traverse

also includes a September 18, 2011, letter to the Court of Appeals regarding his application for

leave to appeal to the Court of Appeals from the Appellate Division affirmance on his direct

appeal. (Dkt. No. 31-3 at 2-3.) In the letter, Petitioner referenced the denial of his § 440.10

motion and indicated that the § 440.10 had not been answered by the Appellate Division. *Id*. at

3. Petitioner claims in his Traverse that on November 10, 2011, after he had written to the Court

of Appeals, he received a reply from the Appellate Division. (Dkt. No. 31 at 15.) Because

Petitioner has provided no information regarding the content of the Appellate Division reply, it is

unclear whether the Appellate Division wrote with regard to Petitioner's motion to appeal to the

Court of Appeals on his direct appeal or his § 440.10 motion or both. *Id.*

In his Petition, Petitioner responded in the affirmative to the question of whether he

appealed from the denial of his § 440.10 motion. (Dkt. No. 1 at 8.) However, he answered in the

negative to the question whether he raised the issues in the § 440.10 on the appeal. *Id.* His

explanation for not raising the issues on appeal was that it was due to medical issues including

but not limited to "lower and upper back pain, that causes (sic) migraines, muscle spasps (sic),

and having neck surgery and going on medical trips to the pain clinic and prescribed medication

for the pain and now having carpal tunnel syndrome in both hands along with having hip and

groin problems, makes it difficult for petitioner to sit and lay down for long periods at a time, so

petitioner was unable to properly exhaust all state remedies." *Id.*

### D.    Habeas Proceeding

Plaintiff filed his habeas Petition on January 15, 2013. (Dkt. No. 1.) On July 2, 2013,

after answering the Petition and filing his Memorandum of Law in Opposition, Respondent's

counsel submitted a letter motion requesting permission to amend to assert that the Petition is time-barred. (Dkt. No. 13 at 1-3.) The request was based upon information that had been received from the District Attorney on July 1, 2013. *Id.*

In his initial Memorandum of Law, counsel for Respondent represented that the District Attorney's Office had not served Petitioner with a copy of the County Court Order denying his § 440.10 motion. *Id.* at 1. As a result, counsel had concluded that the § 440.10 proceeding was still pending because Petitioner's time within which to seek leave to appeal would not commence running until service of the Order with Notice of Entry. *Id.* Counsel further represented that pendency of the proceeding tolled the habeas statute of limitations. *Id.* The representations had been based upon a statement by the District Attorney's Office that its file did not contain a notice of entry which would have documented service, leading the Office to believe service of the Order had not been made. *Id.*

On July 1, 2013, counsel was informed by the District Attorney's Office that the Notice of Entry, which had apparently been misfiled, had been located. *Id.* at 2. The District Attorney's Office provided counsel with copies of June 20, 2011, correspondence to Petitioner from the Chief Assistant District Attorney enclosing Judge McGinty's Order on the § 440.10 motion and the Notice of Entry of the Order, along with an affidavit of service executed on June 20, 2011. (Dkt. No. 13-1 at 1-12.)

The Court granted Respondent's request on September 13, 2013, after having allowed Petitioner until September 3, 2013, to file papers in opposition.[3] (Dkt. Nos. 16 and 20.)

---

[3] Petitioner filed no opposition papers despite being granted an extension to do so. (Dkt. No. 16.)

Respondent filed his Supplemental Memorandum of Law raising statute of limitations as a ground for dismissal of Petitioner's Petition on September 25, 2013. (Dkt. No. 21.) On September 26, 2013, Petitioner was given thirty days to file a reply to Respondent's submissions. (Dkt. No. 22.) Thereafter, Petitioner made and was granted four requests for extensions of time to submit his reply. (*See* Dkt. Nos. 23-30.) On Petitioner's fourth request for an extension, the Court extended his time to file opposition to February 18, 2014, and advised Petitioner that no further extensions would be granted. (Dkt. No. 30.)

Petitioner filed a Traverse, which included, *inter alia*, his opposition to Respondent's statute of limitations defense, on February 28, 2014. (Dkt. No. 30.) Petitioner thereafter requested additional time to respond to arguments made by Respondent in his initial opposition, and was granted leave to serve a supplemental reply by June 9, 2014. (Dkt. Nos. 32-33.) Petitioner's supplemental reply was filed on June 16, 2014. (Dkt. No. 34.) The parties were advised by the Court that briefing was closed on June 18, 2014. (Dkt. No. 35.)

## III.  STATUTE OF LIMITATIONS UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA")

### A.  Legal Standard

#### 1.  Statute of limitations under the AEDPA

Under the AEDPA, a petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1). A conviction becomes final for AEDPA purposes "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," that is ninety days after the final determination by the state court. *Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir. 2001) (citation and internal quotation marks

omitted).  The statute of limitations may be tolled when a "properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see also Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005).  However, a post-conviction challenge does "not reset the date from which the one-year statute of limitations begins to run.  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("If the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court.")  The statute of limitations begins to run again from the date on which the state court issues a final order and no further appellate review is available.  *See, e.g.*, *Saunders v. Senkowski*, 587 F.3d 543, 549 (2d Cir. 2009).  "A state-court collateral attack on a conviction cannot toll an already expired limitations period."  *Bell v. Herbert*, 476 F.Supp. 2d 235, 244 (W.D.N.Y. 2007) (citing *Smith*, 208 F.3d at 13, 17.)

2. <u>Equitable Tolling</u>

The AEDPA statute of limitations is not jurisdictional and is subject to equitable tolling in appropriate cases.  *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Smith*, 208 F.3d at 17.  The Supreme Court has made it clear that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649 (citation and internal quotation marks omitted); *see also Smith*, 208 F.3d at 17 (the one year AEDPA statute of limitations may be equitably tolled in "extraordinary or exceptional circumstances" where the party seeking equitable tolling has "acted with reasonable diligence during the period he seeks to toll").  A petitioner seeking to toll the statute of limitations must not only show that extraordinary

circumstances prevented him from filing his petition, and that he acted with due diligence throughout the period he seeks to toll, he must "demonstrate a causal connection relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Where extraordinary circumstances prevented the petitioner from filing his petition "for some length of time," the federal habeas court must still determine whether they "prevented him from filing his petition *on time*." *Id.* (emphasis in original; citation and internal quotation marks omitted).

"[W]hether equitable tolling is warranted in a given situation is a highly case-specific inquiry." *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (citation and internal quotation marks omitted). "To establish extraordinary circumstances, a petitioner must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments. Further, a petitioner must show that he was unable to pursue his legal rights during the entire time he seeks to toll. *Collins v. Artus*, 496 F. Supp. 2d 305, 313 (S.D.N.Y. 2007).

3.     Equitable Exception

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1931-36 (2013), the Supreme Court held that a credible showing of "actual innocence" under the standard announced in *Schlup v. Delo*, 513 U.S. 298, 329 (1995) could serve as a gateway for gaining review of an otherwise time-barred habeas petition. A year earlier, in *Rivas v. Fischer*, 687 F.3d 514, 530-43 (2d Cir. 2012), the Second Circuit had concluded that a petitioner who can demonstrate "actual

innocence" may be excused from the AEDPA one-year statute of limitations period.[4]

In *Rivas*, the Second Circuit distinguished a plea to override the AEDPA limitations period based upon actual innocence from a request for equitable tolling, finding the actual innocence issue to be more accurately described as whether an "equitable exception" to § 2244(d)(1) exists in such cases. 687 F.3d at 547, n.42. The Supreme Court, citing *Rivas*, adopted the term "equitable exception" in *McQuiggin*. 133 S.Ct. at 1931.

"To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of new evidence.'" *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). The claim of innocence must be both "credible" and "compelling." *Rivas*, 687 F.3d at 541 (citing *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). In order for a claim to be found credible, it must be supported by "new reliable evidence whether it is exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Schlup*, 513 U.S. at 324; *accord Rivas*, 687 F.3d at 541, 543 ("new evidence" is evidence not presented at trial). A claim of innocence is compelling if the petitioner proves that it is more likely than not that "any reasonable juror would have a reasonable doubt." *House*, 547 U.S. at 538; *accord Rivas*, 687 F.3d at 541. When a Petitioner presents new evidence, "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v.*

---

[4] Actual innocence serves only as a gateway to federal habeas review by allowing an otherwise untimely petition to be reviewed on the merits. *McQuiggin*, 133 S.Ct. at 1928. It does not, standing alone, warrant relief. *Id*.

*Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) ( quoting *Schlup*, 513 U.S. at 327-28).

**B.    Application**

1.    Timeliness of the Petition

The Appellate Division denied Plaintiff's motion to appeal to the Court of Appeals, brought pursuant to CPL § 460.20, on July 21, 2011.  (Dkt. No. 12-7 at 3.)  Petitioner did not file a petition for a writ of certiorari in the Supreme Court.  (Dkt. No. 1 at 3.)  Therefore, Petitioner's conviction became final on October 19, 2011, ninety days after the denial of his motion to appeal to the Court of Appeals, and the one-year limitation period under the AEDPA began to run.  *See Williams*, 237 F.3d 147, 151 (2d Cir. 2001).  Absent a tolling of the statute of limitations, Petitioner's last day to file a timely habeas petition within the statute of limitation was October 19, 2012.  Petitioner's habeas petition, dated January 3, 2013, was not filed until January 15, 2013.  (Dkt. No. 1.)

As noted above, Petitioner filed a motion to vacate his conviction under CPL § 440.40 on August 19, 2010, well before the statute of limitations began to run.  (Dkt. No. 12-8 at 9-10.)  The motion was denied in Judge McGinty's Decision and Order, dated May 11, 2011, and entered on the same date.  (Dkt. No. 21-1 at 3, 12.)  The Decision and Order, with notice of entry was served by mail on Petitioner by the District Attorney's Office on June 20, 2011.  *Id*. at 1-2.

The question of when the denial of Petitioner's § 440.10 motion became final must be determined because if the denial was not final prior to the time the one-year limitations period began to run, it would present a tolling issue.  Under New York law, an order denying a § 440.10 motion to vacate a judgment of conviction is an intermediate order from which an appeal to the Appellate Division may properly be limited.  *See People v. Thomas*, 583 N.Y.S.2d 424, 425 (1st

Dep't 1992). Under CPL § 450.15(1), an order denying a § 440.10 motion may be appealed only

when the Appellate Division issues a certificate granting leave to appeal pursuant to CPL

§ 460.15. The defendant must make application for a certificate granting leave to appeal under

§ 460.15 within thirty days after service of a copy of the order sought to be appealed.[5] *See* CPL

§ 460.10(4)(a). CPL § 460.15 provides that:

> 1. A certificate granting leave to appeal to an intermediate
> appellate court is an order of one judge or justice of the
> intermediate appellate court to which the appeal is sought to be
> taken granting such permission and certifying that the case
> involves questions of law or fact which ought to be reviewed by
> the intermediate appellate court.

> 2. An application for such certificate must be made in a manner
> determined by the rules of the appellate division of the department
> in which such intermediate appellate court is located. Not more
> than one application may be made for such a certificate.

Section 800.3 of the Appellate Division Third Department Rules of Practice, in effect in

2011, provides in relevant part that:

> An application to a justice of the Appellate Division for leave to
> appeal in a . . . criminal action or proceeding (CPL 460.15;
> 460.20), may, but need not be, addressed to a named justice, and,
> unless otherwise directed by order to show cause, shall be made
> returnable at the court's address in Albany, in the manner provided
> in section 800.2(a) of this Part.[6]

N.Y. Comp.Codes R. Regs. tit. 22, § 800.3.

---

[5] The Court has given Petitioner the benefit of the additional five days for mailing under
CPLR 2103(b)(2) in determining the timeliness of his July 23, 2011, Notice of Appeal. (Dkt.
No. 31-3 at 3.)

[6] N.Y. Comp.Codes R. Regs. tit. 22, 880.2(a), referred in § 800.3, requires that a motion
be made upon notice as prescribed in CPLR Rule 2214, which sets forth the requirements for
service of a notice of motion and supporting papers and requires the parties to furnish the court
with copies of all papers served by the party.

The Notice of Appeal from the denial of his § 440.10 motion submitted by Petitioner provides that "David Rhodes, hereby appeals pursuant to § 460.15 of the New York Criminal Procedure Law, certifying that this case involves a question of law or fact which ought to be reviewed by the Appellate Division, Third Department." (Dkt. No. 31-3 at 2.) The Notice of Appeal clearly failed to comply with the requirements of CPL §§ 460.10(4)(a) and 460.15 and the Third Department Rules governing applications made under § 460.15. Moreover, there is nothing in the record indicating that the Notice of Appeal was submitted to, or acted upon by, the Appellate Division, only that a copy went to the Ulster County Court Clerk. Although the Notice of Appeal indicates that the Ulster County District Attorney was provided with a copy, there is no certificate or affidavit of service showing that to be the case, in contrast to Petitioner's pro se § 440.10 motion for which he did an affidavit of service showing service on the District Attorney. (Dkt. No. 12-8 at 2.)

Petitioner claims that he received a letter from the Appellate Division on November 10, 2011, in response to his September 18, 2011, letter to the Court of Appeals inquiring as to the status of his application to the Appellate Division for leave to appeal to the Court of Appeals and noting that the denial of his § 440.10 motion had not been answered by the Appellate Division. (Dkt. Nos. 31 at 15; 31-3 at 2-3.) However, Petitioner has provided no information regarding the contents of the letter, including whether the Appellate Division addressed the denial of the § 440.10 motion in any fashion. Furthermore, Petitioner has conceded that he never raised the issues in the § 440.10 motion in the Appellate Division, blaming the failure on health problems. (Dkt. No. 1 at 8.)

Based upon both what is and what is not in the state court record and Petitioner's papers,

the Court must conclude that Petitioner failed to file an application for a certificate granting leave to appeal to the denial of his § 440.10 motion with the Appellate Division in accordance with New York State law, and Judge McGinty's intermediate order denying the motion became final when the time within which Petitioner was required to file an application for leave to appeal expired months before the commencement of the running of the statute of limitations. Therefore, the Court finds that the one-year statute of limitations that commenced running on October 19, 2011, was not tolled by Petitioner's § 440.10 motion, and that Petitioner's Petition, which was signed by him on January 3, 2013, and filed on January 15, 2013, is time-barred.

### 2. Equitable Tolling

Petitioner has asserted two grounds for equitable tolling of the statute of limitations in this case.[7] They are: (1) that he was prevented from filing a timely habeas petition because his legal papers were damaged by corrections officers; and (2) his health problems prevented him from filing a timely petition. (Dkt. No. 31 at 8-10.) The Court finds that neither of those grounds constitutes a valid basis for an equitable tolling of the statute of limitations in this case.

---

[7] Petitioner has not argued that he believed that an appeal from the denial of his § 440.10 motion was still pending before the Appellate Division awaiting determination during the one-year period after his conviction became final, thereby tolling the statute of limitations. Any such argument would in any event be futile since ignorance of the law    in this case the proper procedure for seeking leave to appeal the denial to the Appellate Division    does not constitute grounds for equitable tolling. *See Adkins v. Warden*, 585 F.Supp. 2d 286, 297 (D. Conn. 2008) ("Most courts also recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period."); *Ruiz v. Poole*, 566 F.Supp. 2d 336, 341 (S.D.N.Y. 2008) ("[I]gnorance of law does not constitute a rare and extraordinary circumstance that would merit equitable tolling."); *see also Ormiston v. Nelson*, 117 F.3d 69, 72 n.5 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations.").

a.     Damage to Petitioner's Legal Papers

Petitioner cites the Second Circuit decision in *Valverde,* 224 F.3d 129, in support of his claim that damage to his legal papers provides a valid basis for an equitable tolling of the statute of limitations in this case.  In *Valverde*, the Second Circuit held that "the confiscation of a prisoner's legal papers by a corrections officer *shortly before* the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run."  *Id*. at 133 (emphasis added).

In *Valverde*, the district court dismissed a habeas petition on statute of limitations grounds because it had not been filed within a "reasonable time" after the effective date of the AEDPA.  *Id*. at 132-33.  The petitioner's conviction had become final on March 6, 1996, and his petition was not filed until fourteen months later on May 6, 1997.  *Id*. at 132.  The petitioner in *Valverde* had submitted a sworn affirmation to the district court in which he stated that he had first learned of the AEDPA in April of 1997 and sought help from the law library.  *Id*. at 135.  Petitioner was given a habeas petition form pursuant to 28 U.S.C. § 2254, which he completed and sent to the law library to be typed.  However, a corrections officer in the Special Housing Unit confiscated his legal papers from another inmate, preventing the petitioner from completing another form until the beginning of May of 1997.  *Id*.  The Second Circuit vacated the dismissal of the petition by the district court, which had not considered the petitioner's confiscation grounds for equitable tolling, and remanded for development of the facts relevant to the petitioner's claim.  *Id*. at 136-37.

Petitioner claims that he is entitled to equitable tolling of the limitations period under

*Valverde* because on or about February 11, 2011, corrections officers McKay and House searched his cell, damaging and destroying legal documents by throwing legal papers in the shower and running water on them, squeezing toothpaste on them, smearing peanut butter on them, dousing them with Muslim oil, throwing them under the bed where there was juice, and tearing them up. (Dkt. Nos. 31 at 5-6 31-1 at 13-14.) Petitioner has not identified the specific legal papers or categories of papers destroyed.

The statute of limitations did not begin running until October 19, 2011, and Petitioner had until October 19, 2012, to file his petition. Therefore, unlike *Valverde*, in which the Second Circuit found extraordinary circumstances where a petitioner's legal papers were confiscated shortly before the filing deadline, Petitioner had approximately a year and a half to attempt to obtain copies of the legal papers that were necessary for him to draft his habeas petition and were too damaged to use. The record is devoid of evidence that Petitioner exercised due diligence to obtain legal documents needed by him to prepare his petition prior to the running of the limitations period, and it is equally devoid of evidence demonstrating a causal relationship between the damage to Petitioner's legal documents and the lateness of the filing of his petition. *See Valverde,* 224 F.3d at 134. Even if the damage to his legal papers arguably prevented Petitioner from filing his petition "for some length of time," there is no basis in the record for concluding that the damage "prevented him from filing his petition *on time*." *Id.* (emphasis in original) Therefore, the Court finds that the alleged damage to Petitioner's legal papers by corrections officers does not provide grounds for an equitable tolling of the statute of limitations.

b.     Petitioner's Health Issues

Petitioner, who had been diagnosed with cervical stenosis, had C3-6 anterior cervical

decompression and fusion with a C-arm surgery on October 28, 2009, and was ordered to rest for at least six months following the surgery. (Dkt. Nos. 31 at 8; 31-2 at 9, 14-15.) According to Petitioner, the surgery necessitated several requests for extensions of time to file a pro se brief in his direct appeal to the Appellate Division. (Dkt. No. 31 at 8.) Petitioner claims that he was granted extensions because during the years 2010 through 2012 he had ongoing medical treatment for migraines, eyes, upper and lower back, testicles, and right hip problems due to degenerative disc disease with a bulging herniated disc that was so painful he could only sit in a wheelchair for short periods of time.[8] *Id*. One of the reasons for seeking extensions on his direct appeal was that he was required to take a lot of medical trips during the times he had special access to the law library. *Id*. The medical trips were to the Pain Treatment Clinic at Upstate University Hospital, where Petitioner had facet blocks on his right L4/L5 spinal area.[9] (Dkt. No. 31 at 9.) The treatments caused muscle weakness in Petitioner's right leg, with a tingling, warm sensation. *Id*. at 9-10.

Petitioner also claims to have been suffering from an emotionally depressed state in 2011 and 2012 after losing his mother in February of 2011. *Id*. at 10. According to Petitioner, after talking to him, one of the clerks in the facility law library told him to file his habeas petition because he was running out of time, and Petitioner worked on it from scratch while working on another matter related to his being in a wheelchair. *Id.*

---

[8] An MRI done on September 12, 2012, revealed multilevel degenerative disc disease, endplate changes with spondylitic ridge flattening the thecal sac, and no central or foraminal stenosis. (Dkt. No. 31-2 at 3-4.)

[9] Petitioner has included three sets of Pain Treatment Discharge Instructions for the Facet Blocks in his opposition. (Dkt. No. 31-2 at 5-7.) The dates of the treatments is not legible. *Id.*

The Second Circuit has "recognized that medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." *Harper v. Ecole*, 648 F.3d 132, 137 (2d Cir. 2011). *See Brown v. Parkchester South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002) (equitable tolling may be appropriate where failure to comply is attributable to medical condition); *Bolarinwa*, 593 F.3d at 231 (holding that under the appropriate circumstances mental illness can justify equitable tolling). "[A] petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period." *Rhodes v. Senkowski*, 82 F.Supp. 2d 160, 173 (S.D.N.Y. 2000) (collecting cases); *see also Swanton v. Graham*, No. 07-CV-4113(JFB), 2009 WL 1406969, at * 5, 2009 U.S. Dist. LEXIS 45806, at * 13-14 (E.D.N.Y. May 19, 2009)[10] (petitioner not entitled to equitable tolling because of mental illness and related medical treatment where he "failed to provide the Court with any objective evidence substantiating his claims of disability, detailing how long such a disability lasted, or describing how the disability was related to his failure to timely file the instant petition."); *Barbosa v. United States of America* No. 01 Civ.7522(JFK), 2002 WL 869553, at * 2, 2002 U.S. Dist. LEXIS 8030, at * 5 (S.D.N.Y. May 3, 2002) ("A petitioner's allegations of illness must be supported by evidence and not merely based on the petitioner's own conclusions."); *Torres v. Miller*, No 99 Civ. 0580 MBM, 1999 WL 714349, at 8, 1999 U.S. Dist. LEXIS 13987, at * 31 (S.D.N.Y. Aug. 27, 1999) (conclusory allegations of physical and mental illness insufficient to

---

[10] Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

justify equitable tolling).

The medical records that Petitioner has submitted in his opposition papers reveal that his spinal surgery took place nearly two years before the statute of limitations on his habeas petition began to run. (Dkt. No. 31-2 at 9, 14-15.) There are no medical records, nor has Petitioner presented any evidence showing that the surgery or the condition for which the surgery was performed, prevented him from filing his habeas petition prior to the expiration of the statute of limitations nearly three years after the surgery. Plaintiff has submitted the results of a September 12, 2012, MRI revealing degenerative disc disease and of three facet blocks (Dkt. No. 31-2 at 3-4, 9), but no evidence showing that the degenerative disc disease prevented him from filing his petition in a timely manner. There is no evidence whatsoever supporting the other physical ailments for which Petitioner claims to have received treatment during the years 2010 through 2012.

Petitioner claims to have been depressed in the period during which the statute of limitations was running. However, he has presented no medical evidence other than his own conclusions as to his condition and even his own assessment of his condition fails to satisfy Petitioner's burden of showing with specificity how "his condition adversely affected [his] capacity to function generally or in relationship to the pursuit [of] his rights." *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Based upon the foregoing, the Court concludes that Plaintiff has failed to establish that he is entitled to an equitable tolling of the statute of limitations as a result of his physical ailments or mental condition. *See Swanton*, 2009 WL 1406969, at * 5; *Barbosa,* 2002 WL 869553, at * 2.

3.    Equitable Exception for Actual Innocence

Petitioner also claims that he is entitled to an equitable exception from the AEDPA statute of limitations based upon a claim that reliable new evidence supports his claim of actual innocence.  (Dkt. No. 31 at 11-15.)   The new evidence identified by Petitioner includes: (1) a statement witness Christopher Coon ("Coon") made to an investigator for the defense which should have been admitted into evidence by his counsel; (2) information that the father of the rape victim's child is a registered sex-offender meaning that the victim gave false testimony regarding the age of her child; (3) information that the victim, who stated she did not know where she was while at the house where the rape allegedly occurred, lived only five minutes away and could have gotten out of the car in the driveway and walked home; (4) information that there was a lamp post at the end of the driveway at the house where the rape allegedly occurred, and the light radiating into the house which had no window treatment rendered the size of the windows, about which there was no testimony, relevant to the victim's claim that it was dark in the house; (5) the victim's testimony that she was pulled up the stairs by the wrist by Petitioner was not mentioned in her statement to detectives or to the nurse who examined her, there were no marks, bruises, or lacerations made by the Petitioner noted by the nurse, and the victim could not remember which wrist Petitioner allegedly held onto; and (6) there was no discussion of the size of the room where the alleged rape took place, although the size was relevant to the victim's claims that she was pushed from the doorway onto a wooden frame bed and hit the bed frame with her knees, because she had no marks on her knees.  (Dkt. Nos. 31 at 13-14; 31-3 at 4-6, 9, 18-23.)

a.       Coon Statement to Investigator

Petitioner has submitted an unsigned handwritten document dated September 20, 2006,

which he has identified as a statement given to a defense investigator by Coon while he was at

the Ulster County jail. (Dkt. No. 31-3 at 4-6.)  The document appears to consist of the

investigator's notes rather than a written statement by Coon.  *Id*. The categories of reliable new

evidence identified in *Schlup* include "exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence."  *See Schlup*. 513 U.S. at 324.  However, "[e]vidence

supporting an actual innocence claim need not fit within one of the categories explicitly listed in

*Schlup* so long as the court determines it to be 'new reliable evidence.'"  *Lopez v. Miller*, 915

F.Supp. 2d 373, 399 n.14 (E.D.N.Y. 2013).  Certain evidence, however, is "simply not the *type* of

evidence that meet[s] the *Schlup* requirement[s]" of credibility and reliability.  *Diaz v. Bellnier*,

974 F.Supp. 2d 136, 144 (E.D.N.Y. 2013) (emphasis in original).  As noted by the court in

*Barrientos v. Lee*, No. 14CV3207-LTS-JCF, 2015 WL 3767238, at * 12, 2015 U.S. Dist. LEXIS

79345, at * 28 (S.D.N.Y. June 17, 2015), "[e]vidence that courts have considered to be 'new and

reliable' includes: signed, notarized, and sworn statements of alibi witnesses; written recantation

of the prosecutor's only witness; unchallenged testimony of expert forensic pathologist; and

DNA testing." (citations omitted).

The Court finds that the unsigned notes made by an unidentified investigator for the

defense during an interview with a witness is not the type of evidence that meets the *Schlup*

requirements of credibility and reliability.  Furthermore, based upon the testimony at trial,

including Coon's own testimony, the Court concludes that the unsigned investigator's notes are

neither credible nor compelling and, even if they were admissible, would not leave any

20

reasonable juror with a reasonable doubt as to Petitioner's guilt.

Coon, who worked for Petitioner at the time of the rape, was at the non-present third party's residence in Ellenville, New York in which the rape of E.A.[11] took place on June 20, 2006, and he saw E.A. after the attack. (Dkt. Nos. 11 at 99-100, 149, 207-08, 216; 12-8 at 75-77.) The notes indicate that Coon told the investigator that while E.A., Petitioner, Coon, and a young woman were at a swimming hole earlier on the day of the rape, E.A. wrapped her legs around Petitioner, and Petitioner told her to get off and she said no. (Dkt. No. 31-3 at 4.) At the trial, however, when asked if he heard E.A. say anything to Petitioner at the swimming hole, Coon testified that he heard her tell him to leave her butt alone. (Dkt. No. 11 at 145.)

The investigator's notes indicate that Coon told him that E.A. gave him her cell phone to call his daughter before she and Petitioner went upstairs at a third party's residence to which Petitioner had driven them. (Dkt. No. 31-3 at 5.) At trial, Coon testified that Petitioner took E.A.'s phone away from her while she was talking to someone and gave it to Coon before Petitioner and E.A. went upstairs. (Dkt. No. 11 at 151-52.) According to the investigator's notes, E.A. asked Petitioner to go upstairs so that they could talk, and Petitioner had said later that she was all over him, and they had sex. (Dkt. No. 31-3 at 6.) Coon's trial testimony included nothing about why Petitioner and E.A. had gone upstairs. (Dkt. No. 11 at 152-53.)

Coon, who remained on the first floor while Petitioner went upstairs with E.A., told the defense investigator that E.A. came downstairs before Petitioner and was acting normally, that she went outside to have a cigarette, and she "was not upset    not crying    no comment." (Dkt. No., 31-3 at 6. At trial, Coon testified that E.A. was crying when she came back downstairs and

---

[11] The victim's initials are used herein to protect her privacy.

went outside on the grass. *Id*. at 153-54, 220-221. Coon also testified that he noticed that Petitioner was all sweaty when he came back downstairs. *Id*. at 156.

The investigator's notes indicate that Coon told him that when Petitioner dropped E.A. off at home, she told him she would call him the next day and acted very happy. (Dkt. No. 31-3 at 6.) Coon testified at trial that the three of them got into the car and left the residence, and that during the ride to E.A.'s house, E.A. was "pissed off," and there was no conversation between Petitioner and E.A. *Id*. at 157. Coon also testified that he did not recall whether E.A. and Petitioner said anything to one another when she got out of the car. *Id*. at 158. According to E.A., when she got out of the car, she was still crying, and when Petitioner asked her if she was okay, she did not answer. *Id*. at 224. When Petitioner told her that he was going to call her later, she told him to forget about her, not to remember her face, and to forget she existed. *Id*.

The testimony at trial calls into doubt Coon's claim that E.A. was fine when she came downstairs and on the way home. Petitioner testified that when she arrived home she collapsed in the living room crying, and she was on the floor crying when her former boyfriend, Terrance, who was residing with her as a friend, returned home. *Id*. at 84, 225. Terrance saw Petitioner and Coon in a vehicle pulling out of E.A.'s driveway. *Id*. at 85. According to Terrance, E.A., still crying, went into the bathroom and lay in the tub with the water running on her with her bra and boxers still on. *Id*. at 86. She told Terrance she had been raped by Petitioner. *Id*.

In addition, E.A. called her long-time friend, Ingrid, in Manhattan at around 12:30 or 1:00am in the early morning of June 21, 2006. *Id*. at 58-59. They spoke for at least forty-five minutes. *Id*. at 62. According to Ingrid, E.A. was very upset and crying. *Id*. E.A. was hysterical, stuttering, crying and sniffling and having difficulty catching her breath. *Id.* at 59-60.

E.A. told Ingrid that she had been raped by Petitioner. *Id*. at 60-61. Ingrid told E.A. to call the police, and E.A., although reluctant to do so, called the State Police. *Id*. at 61.

Because the interview notes are unsigned and the author is not identified, the trial testimony reveals the statements in the interview notes to more likely than not be largely untrue, and the so called new evidence, when considered with the evidence at trial, would not leave any reasonable juror with a reasonable doubt as to Petitioner's guilt, the Court recommends that the investigator's unsigned notes be rejected as new evidence adequate to support a claim of actual innocence by Petitioner.

<center>b. <u>Remaining "New Evidence"</u></center>

Petitioner has failed to demonstrate that if evidence of the close proximity of the residence at which E.A. was raped to her home and the light provided by the lamp post at the end of the driveway were presented to the jury, "no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538. Furthermore, the evidence regarding distance is not new as it was the subject of testimony at trial. (Dkt. No. 11 at 223.) The claimed new evidence regarding the age of E.A.'s son is described by Petitioner as a challenge to E.A.'s credibility. (Dkt. No. 31 at 13-14.) The trial transcript reveals that the question as to her son's age, asked on direct examination, merely provided background information and had no direct relevance to Petitioner's innocence or guilt of the rape charges. *Id*. at 181.

Petitioner has not offered new evidence with regard to E.A.'s claim that he pulled her up the stairs by the wrist. (Dkt. No. 31 at 14.) E.A. was questioned regarding her claim that Petitioner pulled her upstairs by the wrist on cross-examination at trial, and she acknowledged that there were no marks on her wrist and testified that she did not mention her wrist to the police

because it did not hurt at that time.  (Dkt. No. 11 at  266-68.)   Petitioner has done nothing more

than question E.A.'s credibility in light of the absence of evidence of marks, bruises, or

lacerations, and E.A.'s inability to recall which wrist was being held by Petitioner.  (Dkt. No. 31

at 14.)

Petitioner's claim that there was no discussion of the size of the room where the alleged

rape took place is not new evidence.  *Id.*  Petitioner has not offered new evidence as to the size of

the room or evidence showing that the size was relevant to E.A.'s assertion that she hit the bed

frame with her knees but had no marks on her knees.

In sum, none of the "new evidence" identified by Petitioner constitutes new evidence, and

it provides no basis for an equitable exception to the bar imposed by the statute of limitations in

this case.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the Petition for a writ of habeas corpus (Dkt. No. 1) be

**DENIED** and **DISMISSED** in all respects on the grounds that it is time-barred; and it is further

**RECOMMENDED** that a certificate of appealability not issue with respect to any of the

claims set forth in the Petition; and it is hereby

**ORDERED**, that the Clerk's Office provide Petitioner with copies of all unpublished

decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per*

*curiam*).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984

F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: January 12, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2002 WL 869553
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Luis BARBOSA, a/k/a "Shorty", Petitioner,
v.
UNITED STATES OF AMERICA, Respondent.

No. 01 Civ.7522(JFK).
|
May 3, 2002.

**Attorneys and Law Firms**

Luis Barbosa, Fort Dix, New Jersey, Petitioner, pro se.

James B. Comey, United States Attorney for the Southern District of New York, New York, New York, Daniel Margolis, Assistant United States Attorney, for Respondent, of counsel.

*OPINION AND ORDER*

KEENAN, J.

 **\*1** Before the Court is Petitioner Luis Barbosa's ("Barbosa") *prose* application to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (" § 2255"). Barbosa was originally sentenced by Judge Tsoucalas, of the International Court of Trade, sitting in the Southern District of New York, to 262 months imprisonment followed by five years supervised release for a violation of 21 U.S.C. § 846. For the reasons set forth below, Barbosa's application is denied.

*BACKGROUND*

On December 13, 1990, Barbosa was charged with conspiracy to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. § 846. The one-count Superseding Indictment charged violations of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B) as the underlying offenses in the conspiracy. On July 23, 1991, the Government filed a Prior Felony Information based upon Barbosa's guilty plea to a felony involving narcotics. Barbosa was tried by jury and convicted before Judge Tsoucalas on October 2, 1991. On February 27, 1992, the Judge sentenced Barbosa to 262 months imprisonment followed by five years supervised release.

Barbosa appealed his sentence to the Second Circuit on June 22, 1992. This appeal was rejected on May 13, 1993, in an unpublished order. On March 15, 1994, and June 30, 1994, Barbosa submitted two motions for re-sentencing pursuant to Federal Rule of Criminal Procedure 32. Judge Tsoucalas denied these motions on April 19, 1994, and August 8, 1994, respectively.

On May 31, 2000, Barbosa filed a motion pursuant to 18 U.S.C. § 3582(c)(2). The matter was assigned to me. I denied that motion on June 4, 2001. However, Barbosa was given the option of amending his motion to pursue relief under 28 U.S.C. § 2255.

Barbosa's present motion, seeking relief pursuant to § 2255, was received by the Court's Pro Se Office on July 18, 2001. In support of his application, Barbosa cites the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Specifically, Barbosa alleges that under *Apprendi,* the quantity of drugs involved in the crime and the leadership role in the offense with which he was imputed were both used to enhance his sentence, and were elements of the offense that should have been submitted to the jury and proven beyond a reasonable doubt. For the reasons set forth below, Barbosa's motion is denied.

*DISCUSSION*

**I. *Barbosa's Motion is Time-Barred***

A § 2255 motion must be filed within the statute of limitations imposed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The relevant clause provides that § 2255 motions filed after April 24, 1996 must be filed within a year from the latest of the date on which the judgment of conviction becomes final, or the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *See* 28 U.S.C. § 2255(1), (3).

 **\*2** The judgment of conviction becomes final on the date that time to appeal expires. *Bryant v. United States,* No. 99 Civ. 5736, 2000 U.S. Dist. LEXIS 17885, at \*5 (S.D.N.Y. Dec. 11, 2000); *Martinez v.. United States,* No. 00 Civ. 1214, 2000 U.S. Dist. LEXIS 8794, at \*3 (S.D.N.Y. June 28, 2000). Barbosa was sentenced on February 27, 1992. The Second Circuit rejected his appeal of that sentence in

an unpublished order on May 13, 1993. Barbosa did not petition for certiorari to the United States Supreme Court. His judgment then became final on August 13, 1993, the last day on which he could have sought certiorari. *See* Sup.Ct. R. 13.1 (stating that a petition for a writ of certiorari must be filed within 90 days after entry of judgment).

Petitioners such as Barbosa whose judgments became final before the April 24, 1996 effective date of the AEDPA have one year after that date in which to file motions pursuant to § 2255. *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998). Barbosa's time to file a § 2255 motion expired on April 24, 1997. Barbosa's motion was received by this Court's Pro Se Office on July 18, 2001, more than four years after his time to file had expired.

Barbosa argues that the AEDPA deadline should be equitably tolled because he has suffered from physical ailments. The AEDPA's one-year statute of limitations is subject to equitable tolling only in "rare and exceptional circumstances" and the petitioner must demonstrate that he "acted with reasonable diligence throughout the period he seeks to toll."*Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). The tolling requirements have been strictly construed. A petitioner's allegations of illness must be supported by evidence and not based merely on the petitioner's own conclusions. *SeeMendez v. Artuz,* No. 99 Civ. 2472, 2000 U.S. Dist. LEXIS 9958, at *6 (S.D.N.Y. July 18, 2000) (stating that conclusory allegations do not meet the high burden required to justify tolling). Further, a petitioner must prove that he was unable to pursue his legal rights during the entire period that he sought to have tolled. *SeeRhodes v. Senkowski,* 82 F.Supp.2d 160, 169-70 (S.D.N.Y.2000) (finding that petitioner failed to show that his documented medical problems rendered him unable to pursue his legal rights during the relevant time period).

Barbosa seeks to toll the time between April 24, 1996, and April 24, 1997. He attempts to show "exceptional circumstances" claiming that he spends much of his time in and out of hospitals, has diabetes, hernia and asthma attacks, has suffered two heart attacks while in prison, and was told by doctors that he needs a heart transplant. *See* Mot. at 11. He also alleges that his spine froze, causing him to be confined to a wheelchair for two weeks in 1995 and that he was confined to a wheelchair in 1996 and 1997 as a result of his "lower [l]umbar being shattered." Mot. at 11.

These allegations are conclusory and do not provide adequate proof that Barbosa's alleged illnesses rendered him unable to file his motion in a timely manner. Barbosa refers to the Court order that he submit to a complete physical to determine whether he was physically able to stand trial. He also points to occasions where his trial was postponed because he was ill. These events occurred prior to Barbosa's conviction and sentence and do not coincide with the period Barbosa seeks to toll. The evidence provided cannot be used to justify equitable tolling.

**\*3** Barbosa also submitted copies of doctors' reports describing his hospital admission during his incarceration. These reports, however, dating back to April 1992, also fail to address the time period sought to be tolled. It is clear from the reports that Barbosa indeed suffers or at some point suffered from physical ailments, but this is not enough to meet his burden. *SeeRhodes,* 82 F.Supp.2d at 173 ("a petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling").

Although he alleges that he was confined to a wheelchair in 1996 and 1997, Barbosa does not specify the exact amount of time that he was incapacitated, nor detail exactly how being confined to a wheelchair prevented him from filing his motion. Barbosa must show that he was unable to file his motion during the four years allowed to lapse beyond the filing deadline. *SeeMendez,* 2000 U.S. Dist. LEXIS 9958, at *6 (stating that, where petition was late by more than a year and a half, petitioner's illness or hospitalization has to account for the time lapsed). Barbosa has failed to show that the AEDPA's limitation period should be equitably tolled.

## II. *Barbosa's Reliance on Apprendi*
Barbosa contends that the Supreme Court's ruling in *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) supports vacating his conviction. In *Apprendi,* the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt."*Id.* at 490. *Apprendi* was decided after Barbosa's conviction and sentencing. For *Apprendi* to apply to his case, the rule announced must be "new".

A rule is "new" if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final."*Teague v. Lane,* 489 U.S. 288, 301 (1989) (emphasis in original). Generally, a new rule of criminal procedure is not retroactively applied to cases unless (1) "it places

certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) it is a watershed rule, involving "procedures that ... are 'implicit in the concept of ordered liberty.' " *Id.* at 311.

Barbosa relies upon the second *Teague* exception as the basis for *Apprendi'* s retroactive application to his case. *See* Mot. at 1. However, the ruling in *Apprendi* does not meet the standard of "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding."*Sawyer v. Smith,* 497 U.S. 227, 241-42 (1990), *cert.denied,*527 U.S. 1021 (1999). The Second Circuit has recognized that the second *Teague* exception is be interpreted narrowly. *SeeUnited States v. Mandanici,* 205 F.3d 519, 529 (2d Cir.2000) (citations omitted) (noting that the Supreme Court has decided that, beginning with the rule in *Teague,* at least eleven new rules of criminal procedure should not be retroactively applied).

**\*4** The Second Circuit has found that *Apprendi* does not apply retroactively to second or successive petitions under § 2255 because "it is clear that *Apprendi* is not a new rule of constitutional law which has been made retroactive to cases on collateral review by the Supreme Court."*Forbes v. United States,* 262 F.3d 143, 145 (2d Cir.2001). Similarly, the Fourth and Ninth Circuits have ruled that *Apprendi* should not apply retroactively to cases on collateral review. *SeeUnited States v. Sanders,* 247 F.3d 139, 151 (4th Cir.2001); *Jones v. Smith,* 231 F.3d 1227, 1236 (9th Cir.2000).

Although the *Forbes* Court did not rule as to *Apprendi'* s retroactive application to initial § 2255 petitions, *seeid.* at 146, n. 5, the Second Circuit addressed a similar question in *Bilzerian.*In *Bilzerian,* the Second Circuit determined that the Supreme Court's decision in *United States v. Gaudin,* 515 U.S. 506 (1995), which shifted the determination of materiality in an 18 U.S.C. § 1001 prosecution from the judge to the jury, was *not* a watershed rule justifying retroactive collateral review. *SeeBilzerian,* 127 F.3d at 241;*seealsoMandanici,* 205 F.3d at 529-30 ("[T]he rule requiring proof of materiality beyond a reasonable doubt for conviction under § 1001 does not fit within the second *Teague* exception"). Under these Second Circuit cases, the second *Teague* exception does not apply to the new rule announced in *Apprendi.*Therefore the rule announced in *Apprendi* does not support Barbosa's motion.

Even if *Apprendi* applied here, the case does not present an *Apprendi* issue. In *Apprendi,* the Supreme Court held

that "other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."530 U.S. at 490 (emphasis added). Factors that do not result in a sentence above the statutory maximum are not implicated by *Apprendi.SeeUnited States v. McLeod,* 251 F.3d 78, 82 (2d Cir.2001); *United States v. Garcia,* 240 F.3d 180, 184 (2d Cir.2001); *United States v. White,* 240 F.3d 127, 136 (2d Cir.2001).

Barbosa contends that his sentence was enhanced by four points because he was imputed a leadership role in the crime and because the sentencing judge determined the quantity of drugs involved. He further claims that both of these factors, which served to increase his sentence above the statutory maximum, should have been submitted to the jury and proven beyond a reasonable doubt. Instead of being sentenced pursuant to 21 U.S.C. § 841(b)(1)(B), which involves 100 grams or more of heroin, Barbosa alleges that he was sentenced pursuant to § 841(b)(1)(A), which involves one (1) kilogram or more of heroin. Barbosa's assertions are incorrect.

Barbosa was convicted by a jury of conspiracy to distribute, and possess with intent to distribute, heroin in violation of 21 U.S.C. § 846. The indictment explicitly enumerates violations of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) as underlying offenses in the conspiracy. [1] The amount of heroin involved, 100 grams, was stated in the indictment and was submitted to the jury. Barbosa concedes this fact. *See* Mot. at 7. Before sentencing, the Government submitted a Prior Felony Information based upon a felony drug conviction, which, pursuant to § 841(b)(1)(B), served to increase Barbosa's penalties. Section 841(b)(1)(B) states in relevant part:

**\*5** In the case of a violation of subsection (a) of this section involving-

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years ... If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment....

21 U.S.C. § 841(b)(1)(B).

Barbosa was sentenced to 262 months (21 years, 10 months) imprisonment. This is far below the statutory maximum term of life imprisonment to which he was subject. This case does not present an *Apprendi* issue. Barbosa's motion is denied.

### CONCLUSION

For the reasons outlined above, Barbosa's motion is denied. Because the Petitioner has not made a substantial showing of denial of a constitutional right, a certificate of appealability will not issue. *United States v. Perez,* 129 F.3d 255, 260 (2d Cir.1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962). This case is closed and the Court directs the Clerk of the Court to remove this case from the Court's active docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 869553

Footnotes

1 Section 812 establishes the schedules of controlled substances and § 841(a)(1) sets forth unlawful acts involving controlled substances.

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

**Appeal Filed by** BARRIENTOS v. LEE, 2nd Cir., July 8, 2015

2015 WL 3767238
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Carlos BARRIENTOS, Petitioner,

v.

William LEE, Superintendent, Respondent.

No. 14CV3207–LTS–JCF.
|
Signed June 17, 2015.

*MEMORANDUM ORDER ADOPTING
REPORT AND RECOMMENDATION*

LAURA TAYLOR SWAIN, District Judge.

**\*1** On April 27, 2015, Magistrate Judge James C.
Francis issued a Report and Recommendation (the "Report")
recommending that the motion of Petitioner Carlos Barrientos
("Petitioner") for a stay of adjudication of his petition for
a writ of habeas corpus pursuant to 28 U.S.C. § 2254
be denied, and further recommending that the petition be
dismissed as untimely. (*See* Docket Entry No. 20.) On May
6, 2015, Respondent William Lee ("Respondent") filed a
letter urging this Court to adopt Judge Francis' Report. (*See*
Docket Entry No. 21.) On May 19, 2015, Petitioner filed
an affidavit of objection to Judge Francis' Report with an
accompanying memorandum of law. (*See* Docket Entry Nos.
22–23.) On June 2, 2015, Respondent filed his response
to Petitioner's objections. (*See* Docket Entry No. 24.) The
Court has carefully reviewed the parties' submissions and,
for the reasons stated below, the Court adopts the Report,
overrules Petitioner's objections, denies his motion for a stay
and dismisses his petition as untimely.

*DISCUSSION*

When reviewing a report and recommendation, the Court
"may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate."28
U.S.C.S. § 636(b)(1) (c) (LexisNexis 2012). The district

court may "adopt those portions of the report to which no
'specific, written objection' is made, as long as the factual
and legal bases supporting the findings and conclusions
set forth in those sections are not clearly erroneous or
contrary to law. *Adams v. New York State Dep't of Educ.,*
855 F.Supp.2d 205, 206 (S.D.N.Y.2012) (citing Fed.R.Civ.P.
72(b)). Furthermore, objections that "simply reiterate original
arguments" need only be reviewed for clear error. *See
e.g., Pineda v. Masonry Const., Inc.,* 831 F.Supp.2d 666,
671 (S.D.N.Y.2011). Where specific objections are made,
the court must "make a *de novo* determination of those
portions of the report or specified proposed findings or
recommendations."*United States v. Male Juvenile,* 121
F.3d 34, 38 (2d Cir.1997) (internal quotation marks and
citation omitted). In making a *de novo* determination on a
matter specifically objected to, a district court judge "has
discretion in the weight placed on proposed findings and
recommendations and may afford a degree of deference to
the Report and Recommendation."*Vaccariello v. XM Satellite
Radio, Inc.,* 295 F.R.D. 62, 67 (S.D.N.Y.2013).

*Pro se* parties are "entitled to a liberal construction of their
papers, which should be read to 'raise the strongest arguments
that they suggest.' " *Rodriguez v. Barnhart,* 01CV3411–
DAB–MHD, 2002 WL 31875406, at *3 (S.D.N.Y. Dec.24,
2002) (Report and Recommendation adopted May 16,
2004) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d
Cir.1996)). However, "[e]ven a pro se party's objections to
a Report and Recommendation must be specific and clearly
aimed at particular findings in the magistrate's proposal, such
that no party be allowed a second bite at the apple by simply
relitigating a prior argument." *Machicote v. Ercole,* No.
06CV13320–DAB–JCF, 2011 WL 3809920, at *2 (S.D.N.Y.
Aug.25, 2011).

**\*2** Construed liberally, Petitioner's papers may be
read to raise three specific objections to Judge Francis'
recommendation that his habeas petition be dismissed as
untimely (1) that Judge Francis erred in determining that
Petitioner was not entitled to an additional 90 days after the
statutory tolling period to file his federal habeas petition;
(2) that Petitioner's low I.Q. and unfamiliarity with state and
federal procedural rules should have served to equitably toll
the limitation period; and (3) that Judge Francis should not
have addressed the merits of his "actual innocence" claim.

Petitioner's first objection merely reasserts an argument that
was advanced before Judge Francis, and therefore Judge
Francis' determination need only be reviewed for clear

error. *See Nelson,* 618 F.Supp. at 1189. The Court finds no such error in Judge Francis' reasoning. Petitioner's second objection raises for the first time the issues of his allegedly low I.Q. and unfamiliarity with state and federal procedural rules. However, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Federal Bureau of Prisons,* No. 12CV 3774–LAP–KNF, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). Petitioner's third objection, which asserts that Judge Francis should not have examined the merits of his actual innocence claim, raises no disagreement with any specific portion of Judge Francis' analysis.

After carefully reviewing the record below, as well as Judge Francis' thorough and well-reasoned Report and the parties' submissions, the Court agrees with Judge Francis' analysis of the issues presented. The Court therefore adopts the Report in its entirety and, for the reasons stated therein, overrules Petitioner's objections, denies his motion for a stay, and dismisses his petition as untimely.

## CONCLUSION

For the reasons stated above, the Court adopts Judge Francis' Report in its entirety. Petitioner's objections are overruled, his motion for a stay is denied, and his petition is dismissed as untimely.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C.S. 2253(c)(2) (LexisNexis 2008); see generally *United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing standard for issuing a certificate of appealability). The Court certifies pursuant to 28 U.S.C. § 1915(a) (3) that any appeal from this order would not be taken in good faith and, accordingly, any application to proceed on appeal in *forma pauperis* with respect to the claims addressed in the Report and in this Order is denied. *See Coppedge v. United States,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of Court is respectfully requested to enter judgment denying the petition and close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

JAMES C. FRANCIS IV, United States Magistrate Judge.

 *3  TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

Carlos Barrientos, proceeding *pro se,* has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for criminal possession of a controlled substance in the first degree following a jury trial in New York State Supreme Court, New York County. In his petition, Mr. Barrientos asserts that (1) the police search prior to his arrest was unlawful and thus violated his Fourth Amendment rights; (2) the trial court's improper admission of evidence of his prior bad acts, combined with prosecutorial misconduct during summation, deprived him of due process and a fair trial; (3) the trial court abused its discretion by permitting the prosecutor to cross-examine him on his prior drug convictions; and (4) he was deprived of effective assistance when his trial counsel failed to introduce an exculpatory statement by a former co-defendant. The petitioner now moves for a stay in order to exhaust additional claims of prosecutorial misconduct, ineffective assistance of counsel, and actual innocence-claims not included in the instant petition.

For the reasons set forth below, I recommend that the motion for a stay be denied and the petition be dismissed.

### Background

#### A. *The Arrest*

On the evening of March 17, 2005, Police Officers Quillian Virgil and James Sepulveda approached a vehicle parked in a no-parking zone in northern Manhattan. (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp.Memo.") at 2; Appellant's Brief, New York Supreme Court, Appellate Division, First Department ("Pet.App.Brief") at SR 93). [1] The officers asked the petitioner, who was seated in the driver's seat, and Donna Adams, who was seated in the passenger seat, for their driver's licenses. (Opp. Memo. at 2). After determining that neither of the occupants had a valid license, Officer Virgil continued to illuminate the inside of the vehicle with his flashlight and observed a glass tube in the ashtray that he identified as "the stem of a used crack pipe."(Opp. Memo. at 2; Pet.App. Brief at SR 96–97). The officers perceived Ms. Adams to be agitated; she leaned forward to put something on top of a

plastic bag at her feet, at which point the officers directed both passengers to step out of the vehicle. (Pet.App. Brief at 96–98). After they did so, Officer Virgil observed that the plastic bag contained two smaller bags of cocaine. (Opp. Memo. at 2–3; Pet.App. Brief at SR 98). The petitioner and Ms. Adams were both arrested and taken to the police precinct. (Pet.App. Brief at SR 100). During a subsequent search of Mr. Barrientos, the police found a small amount of cocaine in his jacket. [2] (Pet.App. Brief at SR 100).

At trial, Officer Virgil testified that while the petitioner and Ms. Adams were being held in adjacent cells, he overheard Mr. Barrientos ask Ms. Adams to "take the hit for it." (Pet.App. Brief at SR 102; Opp. Memo. at 3; T. at 80). [3] He also testified that Mr. Barrientos then asked if he would be released if Ms. Adams "took the blame." (Pet.App. Brief at SR 102; T. at 90). The next morning, Ms. Adams made a statement in which she acknowledged that the plastic bag found in the vehicle contained cocaine and stated that Mr. Barrientos was present when she purchased the drugs. (Opp. Memo. at 3).

### B. *Procedural History*

 **\*4**  On March 24, 2005, a New York County grand jury indicted both Mr. Barrientos and Ms. Adams on one count of criminal possession of a controlled substance in the first degree in violation of New York Penal Law § 220.21(1) and one count of criminal possession of a controlled substance in the third degree in violation of Penal Law § 220.16(1). (Opp. Memo. at 3; Indictment No. 1397/2005, attached as Exh. A to Affidavit of Carlos Barrientos dated Aug. 2, 2011 ("Second 440.10 Memo."), at SR 250).

### 1. *Suppression Hearing*

On March 2 and 3, 2006, the Honorable Richard Carruthers held a hearing on the defendants' motions to suppress (1) the cocaine found in the vehicle and on the petitioner, (2) various apparently fraudulent identification cards possessed by the defendants, (3) a hammer found in the trunk of the car, and (4) the defendants' post-arrest statements. (Opp. Memo. at 3). The only witness at the hearing was Officer Virgil, [4] who testified to the events surrounding the defendants' arrest. (H. at 19–164, 215).

The court denied the suppression motions in all respects. (H. at 215; Pet.App. Brief at SR 116). Justice Carruthers found that the officers "had the right to approach" the vehicle

and ask for identification because of the car's location in an otherwise vacant no-parking zone; that the petitioner's expired license, the "crack stem" in plain sight, and Ms. Adams' growing agitation gave the officers the right to ask the passengers to exit the vehicle; and that the subsequent discovery of the bags of cocaine "in plain view" gave the officers probable cause to make the ensuing arrests. (H. at 222–24; Opp. Memo. at 9). Lastly, Justice Carruthers determined that both Mr. Barrientos and Ms. Adams made a knowing, voluntary, and intelligent waiver of their rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that their statements to the prosecutor while in custody were voluntarily given. (H. at 225–26; Opp. Memo. at 9). At a *Sandoval* hearing [5] on March 8, 2009, the court held that if Mr. Barrientos testified at trial, the prosecutor could question him regarding the underlying facts of his 1994 felony conviction for criminal possession of a controlled substance, the fact of his 1998 misdemeanor conviction for criminal possession of a controlled substance, and the fact that he was on parole at the time of his arrest for the instant offense. (H. at 359–61; Pet.App. Brief at SR 140). In his oral decision, Justice Carruthers found that, given Mr. Barrientos' "lengthy record of involvement [in] crimes concerning narcotics," it would be appropriate for the jury to hear about a small portion of his criminal history in order to gauge the credibility of his testimony. (H. at 360–61).

### 2. *Ms. Adams' Plea*

Mr. Barrientos' and Ms. Adams' trials were severed on March 8, 2006. (H. at 343; Pet.App. Brief at SR 93). Subsequently, Ms. Adams pled guilty to second-degree drug possession in full satisfaction of the indictment, and received a sentence of five years' imprisonment. (Opp. Memo. at 10 n. 3). She did not appeal her conviction or sentence. (Pet.App. Brief at SR 94).

### 3. *Mr. Barrientos' Trial*

 **\*5**  Justice Carruthers presided over Mr. Barrientos' jury trial, which began on March 9, 2006. The prosecution's case involved testimony from Officers Virgil and Sepulveda as well as from several other witnesses, including experts who testified about the chemical analysis of the narcotics. At the conclusion of the prosecution's case, the petitioner made a motion to dismiss both counts of the indictment, which Justice Carruthers denied. (T. at 387–88). Mr. Barrientos did not testify or introduce any evidence. (T. at 345, 358–59).

On March 14, 2006, the jury found the petitioner guilty of one count of criminal possession of a controlled substance in the first degree. (T. at 489–90). The court found Mr. Barrientos to be a second felony offender (S. at 3–5), and sentenced him on April 4, 2006, to a determinant term of eighteen years' imprisonment followed by five years of post-release supervision (S. at 17).

### 4. *Direct Appeal*

Mr. Barrientos, through counsel, filed a direct appeal on August 6, 2010, in the Appellate Division, First Department. (Pet.App. Brief at SR 92–148; Opp. Memo. at 17). He asserted the first three claims he raises in the instant habeas petition, as well as a fourth claim arguing that his sentence was excessive. (Pet.App. Brief at SR 108). The Appellate Division unanimously affirmed his conviction on May 17, 2011. (Decision and Order dated May 17, 2011 ("5/17/11 Decision") at SR 210–12). It held that the trial court properly denied the suppression motion, finding that the police were entitled to determine whether an occupant of an illegally-parked car could legally move the car, and that the subsequent "plain-view observation of contraband" led to a lawful arrest. (5/17/11 Decision at SR 210–11). The court further found that the pre-trial *Sandoval* ruling constituted a proper exercise of discretion given Mr. Barrientos' criminal record; similarly, it upheld the challenged evidentiary rulings with one exception, which, in any event, it found to be harmless error. (5/17/11 Decision at SR 211–12). Mr. Barrientos sought leave to appeal to the Court of Appeals, raising the first three claims he argued at the Appellate Division. (Letter of Richard E. Mischel dated July 14, 2011, at SR 213–18). The Court of Appeals denied leave on August 2, 2011. (Order Denying Leave at SR 222).

### 5. *Postconviction Proceedings*

#### a. *440.10 Motions*

Mr. Barrientos filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on August 28, 2008, prior to perfecting his direct appeal. (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10(g) (h) dated Aug. 28, 2008 at SR 1–2). There, he argued that: (1) his trial counsel provided ineffective assistance by failing to fully investigate and present evidence regarding an exculpatory statement made by Ms. Adams;[6] (2) the prosecutor's failure to disclose Ms. Adams' statement during trial constituted a *Brady* violation; and (3) the prosecutor failed to disclose any cooperation

agreement with Ms. Adams, thereby violating the petitioner's due process rights pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). (First 440.10 Memo. at SR 6–21).

**\*6** Justice Carruthers denied the motion on December 10, 2008. (Decision and Order dated Dec. 10, 2008 ("12/10/08 Decision") at SR 73–75). Regarding the ineffective assistance of counsel claim, the court concluded that

> [t]he co-defendant stated that she would assert her 5th Amendment privilege, and was thus an unavailable witness.[7] However, her statement was not admissible as a declaration against penal interest, since there were insufficient indicia of reliability. In fact, other evidence existed that the defendant instructed the co-defendant to claim culpability. Under these circumstances, the inability of the defendant's trial attorney to introduce the co-defendant's statement in evidence did not constitute ineffective assistance of counsel.

(12/10/08 Decision at SR 74) (internal citations omitted). Justice Carruthers also found the petitioner's claims of *Brady* and *Rosario* violations meritless as, according to the prosecution's Voluntary Disclosure Form, notes of Ms. Adams' statement were turned over to the petitioner after his indictment. (12/10/08 Decision at SR 7475). Finally, he rejected Mr. Barrientos' claim regarding the nondisclosure of a cooperation agreement between the prosecutor and Ms. Adams as having no factual basis. (12/10/08 Decision at SR 75). The Appellate Division denied leave to appeal on February 2, 2009. (Certificate Denying Leave dated Feb. 2, 2009 at SR 85).

The petitioner filed a second *pro se* motion to vacate his conviction on August 2, 2011, the same day that the Court of Appeals denied leave to appeal the Appellate Division's affirmation of his conviction on direct appeal. (Notice of Motion to Vacate the Judgment, Actual Innocence Claim, dated Aug. 2, 2011 at SR 228, 234). He raised a jurisdictional claim based on a defective indictment and a related actual innocence claim. (Second 440.10 Memo. at SR 228–47). Justice Carruthers again denied the motion because Mr. Barrientos could have, but did not, include these arguments

in his direct appeal, as required by CPL § 440.10. (Decision and Order dated Dec. 14, 2011 at SR 268–69). The Appellate Division denied leave to appeal the Supreme Court's decision on December 27, 2012. (Certificate Denying Leave dated Dec. 20, 2012 at SR 278).

On March 14, 2014, Mr. Barrientos, through counsel, filed a third motion to vacate his conviction. (Notice of Motion to Vacate Conviction Pursuant to CPL § 440.10(a)(b) and (h) dated March 14, 2014 at SR 279–80). The petitioner voluntarily withdrew the motion, however, on June 27, 2014, before it had been decided and after he filed his habeas petition in federal court. (Order dated June 27, 2014 at SR 299).

The petitioner, acting *pro se,* then filed a fourth motion to vacate his conviction on November 3, 2014, while his habeas petition was pending in this Court. (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10(a)(b) and (h) dated Nov. 3, 2014 at SR 300–01). He argued that (1) the trial court lacked personal and subject matter jurisdiction; (2) the judgment was procured by duress, misrepresentation, or fraud due to the prosecutor's failure to present exculpatory evidence to the grand jury; (3) trial counsel was ineffective for failing to raise the deficiencies in the grand jury process, to introduce exculpatory evidence at trial, and to question the propriety of the police illuminating the vehicle with a flashlight; and (4) he is actually innocent. (Memorandum of Law in Support of Motion to Vacate Judgement ("Fourth 440.10 Memo.") at SR 327–44). The actual innocence claim revolves around Ms. Adams' "detailed admission that she solely possessed the drugs" (Fourth 440.10 Memo. at SR 343); notably, Mr. Barrientos presented an ineffective assistance of counsel claim in his first motion to vacate based on the same underlying facts—i.e., Ms. Adams' exculpatory statement. (First 440.10 Memo. at SR 6–13). This motion appears to still be pending in state court. (Affidavit of Carlos Barrientos dated Dec. 11, 2014 ("Stay Motion"), ¶¶ 2–5).

**b. *Habeas Petition and Motion for Stay***

**\*7** Mr. Barrientos executed the instant petition on April 22, 2014 (Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus dated April 22, 2014), and filed an amended petition on August 29, 2014. (Amended Petition under 28 U.S.C. § 2254 dated Aug. 29, 2014 ("Pet ."). He now requests that the Court stay his petition pending the completion of state court proceedings on the unexhausted claims in his current motion to vacate. (Notice of Motion dated Dec. 11, 2014). In his stay request, the petitioner describes the unexhausted claims

as concerning "actual innocence, prosecutorial misconduct, and ineffective assistance of trial counsel."(Stay Motion, ¶ 3). He seeks to exhaust these claims in state court, and if unsuccessful in that forum, to include them in his habeas petition. (Stay Motion, ¶ 5). Mr. Barrientos notes that he was forced to file his habeas petition prior to exhausting state remedies on the additional claims in order to avoid being barred by the statute of limitations under the Antiterrorism and Effective Death Penalty Act ("the AEDPA")). (Stay Motion, ¶ 4).

In his petition, Mr. Barrientos argues that (1) the pre-arrest search and seizure violated his Fourth Amendment rights; (2) he was deprived of a fair trial and due process by the trial court's admission of evidence of his prior bad acts; (3) the trial court abused its discretion in permitting cross-examination of him regarding his prior drug convictions; and (4) he received ineffective assistance due to his trial counsel's failure to introduce an exculpatory statement by Ms. Adams. (Pet., ¶ 13).*Discussion*

**A. *AEDPA Statute of Limitations***
The respondent argues that Mr. Barrientos' habeas corpus petition was not timely filed and is thus barred under the AEDPA's one-year statute of limitations. (Opp. Memo. at 2, 26–32). The one-year clock begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). A collateral state court action is considered " 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999), *aff'd,*531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). In New York, "the statute of limitations is tolled from the date [a § 440.10] motion is filed to the date it is decided by the trial court, as well as during the pendency of an application for leave to appeal from the trial court's denial of that motion."*Collins v. Artus,* 496 F.Supp.2d 305, 312 (S.D.N.Y.2007).

**\*8** The Court of Appeals denied Mr. Barrientos' application for leave to appeal the Appellate Division's affirmation of his conviction on August 2, 2011. (Order Denying Leave at SR 222). His conviction thus became final on October 31, 2011–ninety days after the Court of Appeals' denial of further review, when his time to seek a writ of certiorari from the United States Supreme Court expired. (Pet., ¶ 10); *see Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001) (holding that limitations period for state prisoner's habeas petition "begins to run only after ... the expiration of time for seeking certiorari" by the Supreme Court); *accord Chrysler v. Guiney,* 14 F.Supp.3d 418, 433 (S.D.N.Y.2014) (noting that judgment becomes final ninety days after decision by New York Court of Appeals). This would ordinarily have triggered the commencement of the one-year time limit for filing a federal habeas petition. 28 U.S.C. § 2244(d)(1).

However, because the petitioner had filed a motion to vacate his conviction in state court on August 2, 2011 (Second 440.10 Memo. at SR 225–27), the AEDPA's one-year clock was statutorily tolled while that motion remained pending. *See*28 U.S.C. § 2244(d)(2); *Bennett,* 199 F.3d at 120–21. The Appellate Division denied review of the trial court's denial of that motion by order entered on December 27, 2012. (Certificate Denying Leave dated Dec. 20, 2012 at SR 278). As a result, the one-year limitations period began to run on December 27, 2012, and ended on December 27, 2013. During that time, Mr. Barrientos did not have any collateral motions pending in state court, and thus there was no statutory tolling that would further extend the period for a timely habeas petition. Although the petitioner subsequently filed two state post-conviction motions, both are dated after December 27, 2013, and thus could not have tolled the one-year statute of limitations. *See Conception v. Brown,* 794 F.Supp.2d 416, 420 (W.D.N.Y.2011) (noting that "state-court post-conviction motion cannot restart a statute

of limitations period that has already run"). Accordingly, his habeas petition, dated April 22, 2014, was untimely.

Mr. Barrientos argues that his petition was timely because the one-year clock under the AEDPA did not start until ninety days after December 27, 2012, when the Appellate Division denied leave to appeal the denial of his second motion to vacate. (Pet., ¶ 14). But the addition of ninety days for seeking certiorari applies only to a direct appeal, not to a post-conviction motion. *Smuldone v. Senkowski,* 273 F.3d 133, 137–38 (2d Cir.2001); *accord Saunders v. Senkowski,* 587 F.3d 543, 548–49 (2d Cir.2009). Here, statutory tolling under 28 U.S.C. § 2244(d)(2) is effective only "from the date a petitioner files his or her 440.10 motion until the date the Appellate Division denies the petitioner leave to appeal that decision."*Wilkins v. Kirkpatrick,* No. 06 Civ. 2151, 2009 WL 3644082, at \*7 (S.D.N.Y. Nov. 4, 2009); *accord Chrysler,* 14 F.Supp.3d at 442. Once such leave is denied by the Appellate Division, a state defendant may not seek review of that decision from the New York Court of Appeals. *Wilkins,* 2009 WL 3644082, at \*7; *see also Nichols v. Brown,* No. 09 Civ. 6825, 2013 WL 1703577, at \*1 n. 2 (S.D.N.Y. April 19, 2013). As a result, Mr. Barrientos had no further recourse in state court following the Appellate Division's decision on December 27, 2012, and there was no statutory tolling beyond that date.

**B.** *Equitable Tolling*

**\*9** Although 28 U.S.C. § 2244(d) only provides for tolling of the statute of limitations for habeas petitions by the "pendency of a state post-conviction motion, in rare and exceptional circumstances a petitioner may invoke the courts' power to equitably toll the limitations period."*Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (internal quotation marks and citations omitted); *see also Holland v. Florida,* 560 U.S. 631, 645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (confirming that AEDPA's one-year statute of limitations is not jurisdictional and thus "subject to equitable tolling in appropriate cases"). To be entitled to such tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."*Holland,* 560 U.S. at 649 (internal quotation marks omitted).

To establish the first element required for equitable tolling, the petitioner has the burden of showing he acted with "reasonable diligence throughout the period he seeks to toll."*Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000); *see also Baldayaque v. United States,* 338 F.3d 145, 153

(2d Cir.2003) (ordering district court on remand to consider whether petitioner acted as "diligently as reasonably could have been expected under the circumstances" (emphasis omitted)).

As to the second element, there is a "high bar to deem circumstances sufficiently 'extraordinary' " to warrant equitable relief. *Dillon v. Conway,* 642 F.3d 358, 363 (2d Cir.2011). The inquiry focuses on the severity of the obstacle that prevented the petitioner from filing within the one-year period. *Id.* Sufficiently "severe" obstacles have included extraordinary attorney misconduct, *see Baldayaque,* 338 F.3d at 152–53; the petitioner's mental illness, *Bolarinwa v. Williams,* 593 F.3d 226, 231 (2d Cir.2010), or hospitalization, *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir.2011); prolonged delay by a state court in sending notice of a ruling, *Diaz v. Kelly,* 515 F.3d 149, 154–55 (2d Cir.2008); and intentional obstruction by prison officials of an inmate's ability to file his petition, *Valverde v. Stinson,* 224 F.3d 129, 133–34 (2d Cir.2000). The petitioner must also demonstrate the existence of a "causal relationship between the extraordinary circumstances ... and the lateness of his filing." *Id.* at 134.

Here, Mr. Barrientos has not alleged that he is entitled to equitable tolling, nor has he offered any explanation for his failure to timely file his motion other than his misconception regarding statutory tolling. (Pet., ¶ 14; Petitioner's Affidavit in Reply to Opposition to Motion for Stay ("Stay Reply"), ¶ 4). To be sure, such confusion is not unwarranted, given the maze of federal and state procedural rules that govern the running of the AEDPA's statute of limitations; however, it is not grounds for equitable tolling. *See, e.g., Mears v. Graham,* No. 13 Civ. 8737, 2014 WL 4060022, at *3 (S.D.N.Y. Aug.14, 2014); *Wallace v. Superintendent of Clinton Correctional Facility,* No. 13 Civ. 3989, 2014 WL 2854631, at *7 (S.D.N.Y. June 20, 2014). Moreover, on July 8, 2014, the Honorable Loretta A. Preska, U.S.D.J., ordered Mr. Barrientos to amend his petition because the grounds for habeas relief were not clearly identified. (Order dated July 8, 2014 ("Order to Amend") at 3–4). In so doing, Judge Preska notified Mr. Barrientos that his petition was untimely and specifically directed him to "allege any facts that show that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from timely submitting his petition."(Order to Amend at 7). The petitioner has not provided any explanation in response to this directive.

**\*10** Although Mr. Barrientos is *pro se* and thus is accorded a degree of latitude, *see Triestman v. Federal Bureau of*

*Prisons,* 470 F.3d 471, 474 (2d Cir.2006) ("the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest" (internal quotation marks omitted)), his *pro se* status does not excuse him from fulfilling the requirements for equitable tolling, *see Doe,* 391 F.3d at 175 (noting that "*pro se* status does not in itself constitute an extraordinary circumstance meriting tolling"); *Victorial v. Burge,* 477 F.Supp.2d 652, 654 (S.D.N.Y.2007) (observing that although *pro se* litigants are "held to more lenient standards, [they] are not excused from establishing" elements of equitable tolling). Furthermore, nothing in the record demonstrates that Mr. Barrientos was either a victim of a "rare and exceptional circumstance" or that he acted with reasonable diligence during the relevant period. *See Smith,* 208 F.3d at 17. As a result, he does not meet the criteria for equitable tolling.

**C. *Equitable "Exception"***

Mr. Barrientos' only other avenue for overcoming the untimeliness of his petition is an "equitable exception" to AEDPA's statute of limitations, based on his alleged "actual innocence" claim. *McQuiggin v. Perkins,* ––– U.S. ––––, ––––, 133 S.Ct. 1924, 1931–36, 185 L.Ed.2d 1019 (2013); *see also Rivas v. Fischer,* 687 F.3d 514, 547 n. 42 (2d Cir.2012) (distinguishing plea to override AEDPA's limitations period based on actual innocence from request for equitable tolling). In *McQuiggin,* the Court held that a showing of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." ––– U.S. at ––––, 133 S.Ct. at 1928. The Court cautioned that credible gateway claims are "rare" and must meet the demanding standard laid out in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), by presenting new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner]."*McQuiggin,* ––– U.S. at ––––, 133 S.Ct. at 1928, 1933 (quoting *Schlup,* 513 U.S. at 329) (alteration in original). A district court may also consider "[u]nexplained delay in presenting new evidence," as untimeliness "does bear on the credibility of evidence proffered to show actual innocence."*Id.* at ––––, 133 S.Ct. at 1935–36.

Additionally, a petitioner who passes through the actual innocence gateway must advance an accompanying meritorious constitutional claim. *Rivas,* 687 F.3d at 540. "It is the combination of the two claims-that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error-that permits a habeas

court to review [an untimely] petition ... in order to avoid a miscarriage of justice."*Id.* at 540–41.

**\*11** A viable claim of actual innocence must be both credible and compelling. *Id.* at 518; *accord Smith v. Chappius,* No. 13 Civ. 7595, 2014 WL 5786945, at *2 (S.D.N.Y. Nov.6, 2014). To satisfy the "credible" prong, a claim "must be supported by 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.' " *Rivas,* 687 F.3d at 541 (quoting *Schlup,* 513 U.S. at 324). The "compelling" element requires that petitioner demonstrate "that 'more likely that not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.' " *Id.* (quoting *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)); *accord Williams v. Racette,* No. 13 Civ. 7779, 2014 WL 5285472, at *4 (S.D.N.Y. Oct.15, 2014).

While it is clear that a claim must be supported by "new [ ] evidence" to be credible, *Schlup,* 513 U.S. at 324, "circuit courts are split on whether 'new' includes only 'newly discovered' evidence-evidence that was not *available* at the time of trial-or more broadly encompasses 'newly presented' evidence-all evidence that was not *presented to the jury* during trial."*Lopez v. Miller,* 915 F.Supp.2d 373, 400 n. 16 (E.D.N.Y.2013) (emphasis in original). The Second Circuit in *Rivas* appeared to adhere to the "newly presented" interpretation of the *Schlup* standard, but did not "discuss the issue in detail." *Id.; see also Tuitt v. Martuscello,* No. 12 Civ. 1003, 2013 WL 5508385, at *15 n. 16 (S .D.N.Y. Oct. 2, 2013) (noting that *Rivas* did not specifically address question but cited with approval *Garcia v. Portuondo,* 334 F.Supp.2d 446, 454 (S.D.N.Y.2004), which found "evidence that the original fact finder did not then consider" to be "new"). In support of his actual innocence claim, the petitioner in *Rivas* presented new evidence in the form of an affidavit by a forensic pathology expert. *Rivas,* 687 F.3d at 528. He had first presented this evidence in a 440.10 motion, which was denied on all grounds by the state court. *Id.* at 528–30. Although the Second Circuit found that the factual predicate underlying the affidavit was known to or discoverable by the petitioner at the time of trial, it nevertheless held that the affidavit was "new evidence" and that the actual innocence claim was therefore credible. *Id.* at 536, 543.

Mr. Barrientos raises his actual innocence claim in this Court through his motion for a stay. (Stay Motion, ¶¶ 3, 5). In the interest of justice and efficiency, I deem the substance of that claim-as described in his pending 440.10 motion-as properly before this Court for the purpose of determining whether it renders the petitioner eligible for an equitable exception to the AEDPA's one-year bar. Mr. Barrientos argues that Ms. Adams' "detailed admission that she solely possessed the drugs" is compelling evidence that he is actually innocent of the crime of possession. (Fourth 440.10 Memo. at SR 343). He further argues that her statement "taking full responsibility for the drugs ... was never presented to the grand jury or petit jury."(Affidavit in Support of Motion to Vacate Judgment dated Nov. 3, 2014 ("Fourth 440.10 Aff.") at SR 323).

**\*12** The record makes clear that evidence of Ms. Adams' exculpatory statements were available to the petitioner and his counsel prior to trial. (Rosario List, attached as Exh. C to First 440.10 Memo, at SR 32). Additionally, Officer Virgil testified at the pre-trial hearing about Ms. Adams' statement that "she went and picked up the drugs."(H. at 155; Fourth 440.10 Aff. at SR 311). Nevertheless, because there was no evidence presented at trial regarding Ms. Adams' exculpatory statement, this evidence would qualify as "new" under *Rivas.* [8]

Whether the petitioner's newly presented evidence is "reliable" is a different question. *See Schlup,* 513 U.S. at 324 (listing categories of new reliable evidence to include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence")."Evidence supporting an actual innocence claim need not fit within one of the categories explicitly listed in *Schlup* so long as the court determines it to be 'new reliable evidence.' " *Lopez,* 915 F.Supp.2d at 399 n. 14 (emphasis omitted) (citing *Munchinski v. Wilson,* 694 F.3d 308, 338 (3d Cir.2012); *Wolfe v. Johnson,* 565 F.3d 140, 164 n. 32 (4th Cir.2009); *Souter v. Jones,* 395 F.3d 577, 593 n. 8 (6th Cir.2005)). Nonetheless, certain evidence is "simply not the *type* of evidence that meet[s] the *Schlup* requirement[s]" of credibility and reliability.*Diaz v. Bellnier,* 974 F.Supp.2d 136, 144 (E.D.N.Y.2013). Evidence that courts have considered to be "new and reliable" includes: signed, notarized, and sworn statements of alibi witnesses, *Lopez,* 915 F.Supp.2d at 401; written recantation of the prosecution's only witness, *id.* at 405–09; unchallenged testimony of expert forensic pathologist, *Rivas,* 687 F.3d at 54344; and DNA testing, *House,* 547 U.S. at 540.

Here, Mr. Barrientos offers a purportedly exculpatory statement by his former co-defendant made during an interrogation. However, this evidence lacks several indicia of

reliability: the statement was only informally memorialized in handwritten notes (Adams Statement at SR 27), and is uncorroborated by other evidence. As to the latter point, the petitioner has not made any showing that Ms. Adams, who pled guilty and did not appeal her conviction (Opp. Memo. at 10 n. 3; Pet.App. Brief at SR 94), is unavailable to provide a formal, sworn statement attesting to exclusive ownership of the drugs. Furthermore, the statement itself is somewhat ambiguous: although Ms. Adams is recorded as saying "[t]hey are my drugs. They are not his," she went on to explain that "[w]e made a stop and I went to go get them," indicating that the petitioner was present at the time she acquired the cocaine. (Adams Statement at SR 27). The trial court, in adjudicating Mr. Barrientos' first 440.10 motion, also found that Ms. Adams' statement lacked reliability due to Officer Virgil's testimony that "the defendant instructed the co-defendant to claim culpability."(12/10/08 Decision at SR 74). Consequently, Mr. Barrientos' claim of actual innocence does not satisfy the credibility prong of the *Schlup* standard; on this basis alone, he is not entitled to an equitable exception AEDPA's statute of limitations. *See Diaz,* 974 F.Supp.2d at 144.

**\*13** Even assuming *arguendo* that Ms. Adams' statement is new reliable evidence, it is not sufficiently "compelling" to open the *McQuiggin* gateway. Compelling evidence of innocence is that which is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."*McQuiggin,* —— U.S. at ——, 133 S.Ct. at 1936 (quoting *Schlup,* 513 U.S. at 316). Here, Mr. Barrientos has not made a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."*Id.* at 1928 (internal quotation marks omitted); *cf. Donato v. United States,* No. 09 CV 5617, 2012 WL 4328368, at \*3 (E.D.N.Y. Sept.20, 2012) (exculpatory letter written by cooperating witness that undermined credibility of another prosecution witness found insufficiently compelling); *Melendez v. Lempke,* No. 09 CV 4373, 2012 WL 3887093, at \*16 (E.D.N.Y. Sept. 7, 2012) (unsworn, unofficially translated statement implicating different person in crime did not meet *Schlup* standard).

In this case, Ms. Adams' statement is not compelling evidence of Mr. Barrientos' innocence for a number of reasons. First, the petitioner does not contest his presence in the vehicle in which the cocaine was found. Under New York law,

> [t]he presence of a controlled substance in an automobile ... is

> presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found; except that such presumption does not apply ... when the controlled substance is concealed upon the person of one of the occupants.

Penal Law § 220.25(1); *see also Dixon v. Miller,* 293 F.3d 74, 87 (2d Cir.2002); *Parsons v. Burge,* 373 F.Supp.2d 200, 206 n. 1 (W.D.N.Y.2005); (T. at 463). Therefore, a presumption of "knowing possession" of the drugs attached to Mr. Barrientos, which he does not attempt to rebut other than through Ms. Adams' statement.

Second, had he called Ms. Adams as a witness, Mr. Barrientos would have opened the door to questions regarding the nature of their relationship, which could have undermined her credibility with the jury. [9] Officer Virgil's testimony that he heard Mr. Barrientos ask Ms. Adams to "take the hit" (T. at 80) would also have been likely to discredit her testimony. Accordingly, the evidence presented here is not sufficiently compelling to make a different outcome probable. *See Rivas,* 687 F.3d at 542 (observing that the relevant inquiry is the *"likely* behavior of the trier of fact"). Mr. Barrientos is thus not eligible for an equitable exception to AEDPA's limitations period. Because he has not raised a "tenable actual-innocence gateway pleall," *McQuiggin,* ——U.S. at ——, 133 S. Ct at 1928, I do not reach the merits of the constitutional claims alleged in his habeas petition. And, because his petition should be dismissed as time-barred, his application for a stay is moot. *See Conception,* 794 F.Supp.2d at 423.

### Conclusion

**\*14** For the reasons above, I recommend that Mr. Barrientos' motion for a stay (Docket no. 11) be denied and his petition for a writ of habeas corpus be dismissed as untimely. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, Room 1320, and to the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections will preclude appellate review.

Filed April 27, 2015.

**All Citations**

Slip Copy, 2015 WL 3767238

Footnotes

1    "SR" refers to the state secord of the proceedings in the petitioner's criminal case.

2    Drug paraphernalia and a rock of crack cocaine were also recovered from Ms. Adams when she was frisked after exiting the vehicle. (Pet.App. Brief at SR 99).

3    "H." refers to the transcript of pre-trial hearings on the petitioner's motion to suppress evidence and on the admissibility of evidence of the petitioner's prior bad acts (attached as Exhs. 1–5 and part of Exh. 6 to Opp. Memo.). *See* n. 5, *infra.*"T." refers to the trial transcript (attached as part of Exh. 6 and Exhs. 7–9 to Opp. Memo.), and "S." refers to the sentencing transcript (attached as part of Exh. 9 to Opp. Memo.).

4    By the time of the hearing, Officer Virgil had been promoted to the position of sergeant. (H. at 19–20, 217).

5    A *Sandoval* hearing is a pre-trial proceeding held to determine the extent to which the prosecutor can cross-examine a defendant about his prior bad acts in order to impeach his credibility. *See People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

6    As evidence of this exculpatory statement, Mr. Barrientos cited notes, apparently from a *post-Miranda* interrogation of Ms. Adams on March 18, 2005, that memorialize her statement, "They are my drugs. They are not his. I got them–let's leave it at that. We made a stop and I went to go get them."(Miranda Warning Sheet for Donna Adams dated March 18, 2005 ("Adams Statement"), attached as Exh. A to Affidavit of Carlos Barrientos dated Aug. 28, 2008 ("First 440.10 Memo."), at SR 27).

7    A review of the record indicates that Ms. Adams did not in fact intend to assert her Fifth Amendment right at the petitioner's trial. At a pre-trial hearing, she answered "yes" when Justice Carruthers asked: "is it in fact your decision to testify for the defense on Mr. Barrientos' defense, is that so?". (H. at 339–40). On March 16, 2006, four days into the petitioner's trial and midway through the prosecution's case-in-chief, Mr. Barrientos' counsel stated in a colloquy with the court that the defense had decided not to call Ms. Adams as a witness. (T. at 358–59). Justice Carruthers clarified: "[J]ust to make it clear, Ms. Adams is here, she is in custody, she is here, she is available but nonetheless you don't wish to call her?"(T. at 359). Ms. Adams' counsel, who was present, agreed to advise his client that her testimony was no longer required at Mr. Barrientos' trial. (T. at 359).

     The prosecutor, who was also present during this colloquy (T. at 358–60), appears to have misrepresented these facts in his brief opposing the petitioner's first 440.10 motion. (People's Response to Defendant's 440.10 Motion at SR 46). Justice Carruthers seemingly relied on that misrepresentation in erroneously concluding that Ms. Adams was unavailable to testify, a finding that supported his rejection of the petitioner's ineffective assistance claim. (12/10/08 Decision at SR 74). However, this error is harmless in the context of Mr. Barrientos' habeas petition, as I do not reach the merits of that claim.

8    Even though the timing of the submission of this evidence does not disqualify it from being deemed "new" under *Rivas,* the fact that Mr. Barrientos knew of Ms. Adams' statement during his trial and elected not to call her as a witness, *see supra* note 7; (T. at 358–59), calls into question its significance. *See McQuiggin,* ––– U.S. at –––, 133 S. Ct at 1935 (reiterating that lower courts "may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability" of evidence of actual innocence (quoting *Schlup,* 513 U.S. at 332) (alteration in original)).

9    At sentencing, the prosecution alleged (without providing any supporting evidence) that Ms. Adams and Mr. Barrientos had known each other for twenty years, during which time the petitioner had acted as Ms. Adams' pimp. (S. at 11–12). Although the court did not consider these allegations in determining the petitioner's sentence (S. at 17), it is plausible that had Ms. Adams testified, the prosecution would have endeavored to introduce such information to further damage her credibility.

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1406969
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

George SWANTON, Petitioner,

v.

Harold GRAHAM, Superintendent,
Auburn Correctional Facility, Respondent.

No. 07–CV–4113 (JFB).
|
May 19, 2009.

**Attorneys and Law Firms**

George Swanton, pro se.

Rosalind C. Gray, Esq., Suffolk County District Attorney's
Office, Riverhead, NY, for the respondent.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** George Swanton (hereinafter, "petitioner") petitions this
Court for a writ of habeas corpus, pursuant to 28 U.S.C. §
2254, to vacate his conviction in state court for two counts
of Robbery in the First Degree. Petitioner challenges his
conviction on the following grounds, alleging that: (1) he was
under duress when he pled guilty because the court threatened
the imposition of a 25–50 year sentence, thereby presuming
his guilt; (2) he was provided with ineffective assistance of
counsel because counsel waived petitioner's right to appeal
without his consent; (3) the indictment used to establish
jurisdiction was insufficient to establish the crimes charged,
in that the petitioner was unarmed during the robberies (and,
instead, used notes indicating possession of a weapon); (4)
there is factual insufficiency from the allocution to support
a guilty plea;[1] and (5) he was subjected to double jeopardy,
because he was sentenced for the same crime twice and
will be doubly punished by the imposition of post-release
supervision after his term of imprisonment ends. By petition
dated September 20, 2007, petitioner seeks habeas relief from
this Court. For the reasons set forth below, the Court finds
that the petition is time-barred, the claims are procedurally
barred/defaulted and, in any event, all the claims fail on the
merits. Accordingly, the petition is denied in its entirety.

**I. BACKGROUND**

Petitioner was indicted by a Grand Jury in the Supreme Court
of the State of New York, Suffolk County (the "trial court")
on October 3, 2003, on two counts of Robbery in the First
Degree. N.Y. Penal Law § 160.15[1].

On May 18, 2004, petitioner pled guilty to two counts of
Robbery in the First Degree in full satisfaction of the charges
for which he had been indicted. In particular, petitioner
admitted during his plea allocution that, on September 27,
2003, he forcibly stole $1,700.00 from a Fleet Bank. He
further stated that he gave the bank teller a note that stated,
"Give me all the money, I got a gun, if you give me a[dye]
pack I'll kill you."(Transcript of May 18, 2004 Plea Hearing
("Plea Tr.") at 8–9.) Petitioner further stated that he stole
approximately $5,000.00 from a HSBC Bank on September
30, 2003. He told the court that he directed the bank teller as
follows: "Give me all the 100s, 50s and 20s, I got a gun, if you
give me a[dye] pack I'll kill you."(Plea Tr. at 9.) Petitioner
agreed to the plea to both counts of the indictment with
the understanding that the court would sentence petitioner to
twelve years on each count, to be served concurrently, and
would include five years' post-release supervision. Petitioner
was specifically advised of this sentencing recommendation
at the time of his plea and stated that he understood those to
be the terms of the plea agreement. (Plea Tr. at 3–4.)

On June 17, 2004, petitioner was sentenced to two twelve-
year terms, to be served concurrently, with five years' post-
release supervision. (Transcript of June 17, 2004 Sentencing
Hearing ("Sentencing Tr.") at 4.) Petitioner filed an appeal
on the grounds that his sentence was harsh and excessive,
and that his allocution was insufficient to support the crimes
charged. On March 14, 2006, the Appellate Division, Second
Department, affirmed his conviction. *People v. Swanton,*
27 A.D.2d 591 (N.Y.App.Div.2006). On April 21, 2006,
the New York State Court of Appeals denied petitioner's
application for leave to appeal. *People v. Swanton,* 6 N.Y.3d
853, 816 N.Y.S.2d 759, 849 N.E.2d 982 (N.Y.2006).

**\*2** Petitioner did not seek direct review of his conviction
by the United States Supreme Court, nor does the record
reflect that Petitioner took any subsequent action with respect
to his conviction until 2007.[2] On September 26, 2007, *pro
se* petitioner filed the instant petition before this Court for
a writ of habeas corpus, dated September 20, 2007.[3] This

Court issued an Order to Show Cause on October 3, 2007. Respondent filed his opposition on December 12, 2007. Petitioner submitted a reply on January 16, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review mandated by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.The statute provides, in relevant part, that:

(d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision."*Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."*Williams,* 529 U.S. at 413;*see also Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."*Williams,* 529 U.S. at 413;*see also Earley,* 451 F.3d at 74.

AEDPA establishes a deferential standard of review wherein "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable."Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 411) (emphasis added). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."*Gilchrist,* 260 F.3d at 93 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)); *accord Earley,* 451 F.3d at 74.

**\*3** When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 274, 277 (2d Cir.2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)); *see also Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *DiGuglielmo v. Smith,* 366 F.3d 130, 136–37 (2d Cir.2004); *Lydon v. Kuhlman,* 62 F.Supp.2d 974, 977–78 (E.D.N.Y.1999).

## III. DISCUSSION

### A. Timeliness

Respondent submits that the instant petition is untimely because petitioner failed to file it within the applicable statute of limitations provided by 28 U.S.C. § 2244(d)(1). For the reasons set forth below, the Court agrees, and further finds that there is no basis for equitable tolling.

The AEDPA imposes a one-year statute of limitations on state prisoners seeking habeas corpus review in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from the latest of:

(A) the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A–D). Pursuant to the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation."28 U.S.C. § 2244(d)(2). The Second Circuit has held that a state court application or motion for collateral relief is " 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."*Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999); *see also Carey v. Saffold,* 536 U.S. 214, 217, 220–21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000); *Gant v. Goord,* 430 F.Supp.2d 135, 137 (W.D.N.Y.2006).

In the instant case, subsections (B) through (D) of Section 2244(d)(1) are inapplicable and, therefore, the statute of limitations began to run on the date petitioner's conviction became final, pursuant to Section 2244(d)(1)(A).

**\*4** On April 21, 2006, the New York State Court of Appeals denied petitioner's application for leave to appeal. Pursuant to Supreme Court Rule 13(1), the time for petitioner to seek review in the United States Supreme Court expired ninety days later. *See Williams v. Artuz,* 237 F.3d 147, 150 (2d Cir.2001) ("[A] Petitioner's 'conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expires.'") (quoting *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998)). Accordingly, petitioner's conviction became final and the one-year limitation period began to run on July 20, 2006, and it expired one year later on July 20, 2007.

Here, the habeas petition was filed on September 20, 2007, which is beyond the one-year limitation period. [4]

## B. Equitable Tolling

Although the instant petition is untimely, in "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000); *see also Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir.2000). In order to obtain the benefit of equitable tolling, a petitioner must demonstrate that: (1) "extraordinary circumstances prevented him from filing his petition on time"; and (2) he "acted with reasonable diligence throughout the period he seeks to toll."*Smith,* 208 F.3d at 17. The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Tho Dinh Tran v. Alphonse Hotel Corp.,* 281 F.3d 23, 37 (2d Cir.2002).

In order for a petitioner to meet this burden, he "must demonstrate a causal relationship between the extraordinary circumstances on which his claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."*Baldayaque v. United States,* 338 F.3d 145, 150 (2d Cir.2003) (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir.2001)). Moreover, with respect to medical conditions or mental impairments, equitable tolling is generally considered appropriate where a plaintiff's medical condition or mental impairment prevented him from proceeding in a timely fashion. *See, e.g., Brown v. Parkchester S. Condos.,* 287 F.3d 58, 60 (2d Cir.2002); *Canales v. Sullivan,* 936 F.2d 755, 758 (2d Cir.1991). However, in order for a medical condition or mental impairment to toll the statute, the petitioner must provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights."*Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000).

**\*5** In the instant case, petitioner has asserted that he failed to timely file the instant petition because his alleged

mental illness and related medical treatment prevented him from doing so. (Petition at 13.) Such an argument is unavailing under the circumstances of this case. Petitioner has failed to provide the Court with any objective evidence substantiating his claims of disability, detailing how long such a disability lasted, or describing how the disability was causally related to his failure to timely file the instant petition. [5] *See, e.g., Victorial v. Burge,* 477 F.Supp.2d 652, 655 (S.D.N.Y.2007) (petitioner's bipolar disorder did not warrant equitable tolling where petitioner failed to demonstrate that the illness "affected his ability to act with due diligence during the time period at issue" or was causally connected to his failure to timely file his petition); *Lee v. Superintendent, Attica Corr. Facility,* No. 05–CV–5706 (ARR), 2006 WL 229911, at *2 (E.D.N.Y. Jan.31, 2006) ("[P] etitioner's allegations do not demonstrate that these health problems rendered him unable to pursue his legal rights during the one-year limitations period."); *Williams v. Phillips,* No. 02 CV 5882(SJ), 2005 WL 1072711, at *2 (E.D.N.Y. Apr.29, 2005) (petitioner's claim of mental impairment and proof that medical tests were conducted during the relevant time period did not constitute adequate evidence of a "disabling condition" warranting equitable tolling); *Simpson v. Greene,* No. 03 Civ. 6323, 2003 WL 22999489, at *3 (S.D.N.Y. Dec. 22, 2003) (court declined to toll statute of limitations where petitioner's medical records provided insufficient evidence of "insurmountable problems in [his] mental status"); *Barbosa v. United States,* No. 01 Civ. 7522(JFK), 2002 WL 869553, at *2–*3 (S.D.N.Y. May 3, 2002) ("conclusory" allegations of physical infirmity, coupled with medical reports indicating that petitioner did "at some point suffer[ ] from physical ailments" did not warrant equitable tolling); *Rhodes v. Senkowski,* 82 F.Supp.2d 160, 173 (S.D.N.Y.2000) ("[A] petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period.") (collecting cases). Accordingly, petitioner's unsubstantiated claims of mental illness and hospitalization do not provide a basis for equitable tolling where such evidence would be easily obtained and is readily available to petitioner. Moreover, this Court finds petitioner's conclusory excuse to be legally insufficient to justify equitable tolling because he has failed to demonstrate that his mental condition prevented him from pursuing his legal rights throughout the one-year period.

Petitioner further argues that he failed to exhaust his state remedies because he "[doesn't] know much about the law."(Petition at 6, 8.) However, to the extent petitioner is asserting that ignorance of the law also prevented him from filing the instant petition in a timely manner, the Court rejects such an argument, as it is well-settled that a mistake or lack of legal knowledge is not an excuse under the law, and any equitable tolling argument arising therefrom is without merit. *See, e.g., Forbes v. Walsh,* No. 04–CV5076 (LAK), 2007 WL 54792, at *4 (S.D.N.Y. Jan.9, 2007) ("[T]hat [petitioner] was ignorant of the law and had to rely on other inmates for help—are not 'extraordinary' [circumstances], as they apply to most inmates."); *Williams v. Breslin,* No. 03–CV–1848 (RWS), 2004 WL 2368011, at *6 (S.D.N.Y. Oct.20, 2004) ("A lack of legal knowledge, however, cannot excuse a delay in filing a petition.") (internal quotation and citation omitted); *Ayala v. Miller,* No. 03–CV3289 (JG), 2004 WL 2126966, at *2 (E.D.N.Y. Sept.24, 2004) ("Neither a prisoner's pro se status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations."); *Hickey v. Senkowski,* No. 02 Civ. 1437(DC), 2003 WL 255319, at *4 (S.D.N.Y. Feb.4,2003) (petitioner's mistake of law did not constitute an extraordinary or unusual circumstance meriting equitable tolling); *Cuevas v. New York,* No. 01 Civ. 2550(RWS), 2002 U.S. Dist. LEXIS 2011, at *7, 2002 WL 206985 (S.D.N.Y. Feb. 11, 2002) ("[I]t is well-settled that 'ignorance of the law' does not entitle a petitioner to equitable tolling."); *Fennell v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1997) (excuse of "being uneducated and not familiar with legal research and legal procedures" did not warrant equitable tolling because it could be made by "virtually all inmates").

**\*6** In short, petitioner has not presented any evidence of grounds that warrant equitable tolling, nor has he made a showing of actual innocence. *See Whitley v. Senkowski,* 317 F.3d 223, 225 (2d Cir.2003) (holding that it was in error to dismiss a petition claiming actual innocence, on statute of limitations grounds, without further analysis). Accordingly, the petition is dismissed as time-barred. However, in an abundance of caution, the Court finds that, even assuming *arguendo* that the petition was timely, the claims are procedurally barred and/or defaulted and, in any event, fail on the merits.

### C. Exhaustion and Procedural Default

Petitioner has exhausted some, but not all, of the claims he raises in the instant petition. As set forth *infra,* the following claims asserted by petitioner are not only unexhausted,

but are procedurally defaulted because petitioner failed to raise them on direct appeal: (1) involuntary and coercive plea; (2) ineffective assistance of counsel; (3) defective indictment; and (4) double jeopardy. Similarly, petitioner's insufficient allocution claim, although sufficiently exhausted, is procedurally barred. In any event, even assuming *arguendo* that these claims were all reviewable, they are without merit.

### 1. Failure to Exhaust State Remedies

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida,* 549 U.S. 327, 332, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (quotation marks omitted) (alteration in original)). However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard,* 404 U.S. at 275–76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Duncan,* 513 U.S. at 365–66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' " *Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Daye,* 696 F.2d at 191)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim."

*Daye,* 696 F.2d at 191–92 (citing *Picard,* 404 U.S. at 276 and *United States ex rel. Cleveland v. Casscles,* 479 F.2d 15, 19–20 (2d Cir.1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

**\*7** In the instant case, the Court finds that only petitioner's claim of insufficient allocution is properly exhausted. [6] However, petitioner's failure to seek leave to appeal the remainder of his instant claims to the Court of Appeals renders those claims unexhausted. As a result, the Court finds the instant habeas petition to be "mixed."

In such a situation, where claims in a federal habeas petition have not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be granted unless exhaustion has occurred or "there is an absence of available state corrective process"); *see also Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted ." *Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)). Here, all but one of petitioner's claims are irreparably unexhausted, as he already perfected his one appeal as of right to the Court of Appeals, pursuant to New York Court Rules § 500.10. However, by finding that these claims can no longer be exhausted, this Court deems them exhausted, but procedurally defaulted, as described below.

### 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) (quoting *Coleman,* 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those

claims are ... to be deemed exhausted." *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) and *Grey v. Hoke,* 933 F.2d 117, 120 Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane,* 118 F.3d at 139 (quoting *Hoke,* 933 F.2d at 120 (quoting *Harris,* 489 U.S. at 263 n. 9)).

The purpose of the procedural bar rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and maintain its judicial procedures as it sees fit. *Coleman,* 501 U.S. at 730–33. Thus, a federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Id.* at 750. A fundamental miscarriage of justice only occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

**\*8** In the instant case, following his conviction, petitioner filed a direct appeal to the New York Appellate Division, arguing that his allocution at the plea was insufficient to establish the crime of robbery in the first degree, and the sentence imposed was harsh and excessive and should be modified in the interest of justice. *People v. Swanton,* 27 A.D.3d 591, 810 N.Y.S.2d 375 (N.Y.App.Div.2006). In petitioner's letter application to the New York Court of Appeals, he raised the same two issues. *See People v. Swanton,* 6 N.Y.3d 853, 816 N.Y.S.2d 759, 849 N.E.2d 982 (N.Y.2006). The remaining claims petitioner now brings before this Court were not presented to the Appellate Division or the New York State Court of Appeals for review; consequently, any subsequent application for appellate review of those claims would be futile, rendering them procedurally defaulted.[7] *See, e.g., Martinez v. Kelly,* No. 01 Civ. 11570DABJCF, 2005 WL 1863854, at \*4 (S.D.N.Y. Aug.4, 2005) (failure to present claim to Appellate Division and Court of Appeals would result in procedural bar, pursuant to N.Y. Court of Appeals Rule 500.10(a)); *King v. Phillips,* No. 03–CV–4183 (CBA), 2005 WL 1027545, at \*3 (E.D.N.Y. May 2, 2005) ("As [petitioner] did not raise any of these claims as federal constitutional issues before the New York Court of Appeals, such claims are

unexhausted. Moreover, there are no longer means by which such claims can be presented to the state's highest court, because [petitioner] has used his one permissible request for leave to appeal to the New York Court of Appeals."). Because no further state remedies are available to petitioner for these claims, they are technically exhausted. *Coleman,* 501 U.S. at 732. However, they are procedurally barred, because he did not raise them on direct appeal. *Hoke,* 933 F.2d at 121. Further, petitioner has provided no reasonable explanation for his failure to raise these claims in his direct appeal in state court, nor has he demonstrated that a fundamental miscarriage of justice would occur if these claims were not reviewed by the habeas court. Petitioner's assertion that he did not raise certain issues on appeal because of his admission to a mental health facility is unsupported by evidence and further undermined by the fact that he did perfect his right to direct appeal on one of the claims presented herein. *See People v. Swanton,* 27 A.D.3d 591, 810 N.Y.S.2d 375 (N.Y.App.Div.2006); *see also People v. Swanton,* 6 N.Y.3d 853, 816 N.Y.S.2d 759, 849 N.E.2d 982 (N.Y.2006). Accordingly, petitioner's following claims are deemed exhausted, but are procedurally defaulted: (1) involuntary and coercive plea; (2) ineffective assistance of counsel; (3) defective indictment; and (4) double jeopardy. Petitioner's claim of insufficient allocution was properly exhausted in state court, but is also procedurally barred. In any event, even assuming *arguendo* that these claims were reviewable, they are all substantively without merit, as set forth *infra.*

### D. Petitioner's Claims

#### 1. Involuntary and Coercive Guilty Plea

**\*9** Petitioner argues that his guilty plea was coerced and involuntary because, at or around the time of his guilty plea, he was under duress because the court threatened the imposition of a 50–year–to–life sentence, thereby presuming his guilt. For the reasons set forth below, this claim fails on the merits.

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Adams,* 448 F.3d 492, 497 (2d Cir.2006) (quoting *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d

143 (2005)); *accord Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States,* 139 F.3d 322, 324 (2d Cir.1998). However, a defendant may challenge a guilty plea on the grounds that it was not made knowingly and voluntarily. *United States v. Simmons,* 164 F.3d 76, 79 (2d Cir.1998).

To that end, though, "the representations of the defendant, his lawyer, and the prosecutor at [ ] a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."*Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992) ("[T]he District Court could properly reject [petitioner's] unsupported allegations" that his plea was not knowing or voluntary, "which merely contradicted [petitioner's] earlier statements made under oath at his plea allocution."); *Vasquez v. Filion,* 219 F.Supp.2d 194, 197–98 (E.D.N.Y.2002) (defendant's "unequivocal," "rational" and "coherent" responses to the trial court's questions during plea hearing belied later claim that plea was not knowing and voluntary).

In the present case, petitioner asserts that the trial court coerced him into pleading guilty by threatening the imposition of a 50–year–to life sentence, and in doing so, also presumed his guilt. A careful review of the record reveals no such threat or presumption of guilt. On the contrary, the record demonstrates the following: (1) defense counsel stated that petitioner wished to enter into a plea agreement, which petitioner confirmed; (2) petitioner demonstrated his desire to plead guilty through his plea allocution; (3) petitioner affirmed that he had discussed the plea with his attorney; (4) petitioner denied that he was threatened or coerced into entering the plea;[8] (5) petitioner definitively stated that he was pleading guilty voluntarily and of his own accord; and (6) petitioner stated that he understood the sentencing consequences of his plea agreement and that his plea carried the same legal force as a jury verdict of guilty. (*See generally* Plea Tr.) The only reference to a "50–year–to–life sentence" arose when the trial court accurately stated that petitioner "face [d the] possibility of 25–to–life on each of the bank robbery charges because there were two separate incidents...." (Plea Tr. at 5–6.) This statement does not support claims of coercion or presumption of guilt.[9] In fact, moments after notifying the petitioner and

his counsel of the possibility of prison, the trial court asked petitioner, in open court, whether any threats were made "by anyone for you to have entered plea of guilty to these two robbery charges."(Plea Tr. at 5.) Petitioner replied, "No, sir," (Plea Tr. at 6), thereby confirming that no threats were made. Accordingly, petitioner's claims of duress and coercion related to the alleged threat of a "50–to–life sentence" are belied by his unequivocal, sworn statements at the plea hearing. In short, there is no evidence whatsoever of duress in connection with the guilty plea. Therefore, even assuming *arguendo* the claim is not procedurally barred, it is without merit.

### 2. Ineffective Assistance of Counsel

**\*10** Petitioner next contends that he received ineffective assistance of counsel because counsel waived petitioner's right to appeal without his consent. Under the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness,"*id.* at 688, and (2)"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."*Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."*Greiner,* 417 F.3d at 319 (quoting *Rompilla v. Beard,* 545 U.S. 374, 389, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Strickland,* 466 U.S. at 694. "Reasonable

probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004). As set forth below, petitioner's claim fails to satisfy either element.

Petitioner argues that his trial counsel was deficient because counsel waived petitioner's right to appeal without his consent. However, petitioner repeatedly acknowledged at his plea hearing that he understood that he was waiving that right as part of his plea bargain. (*See* Plea Tr. at 4 ("THE COURT: And ... you're waiving your right to appeal based on the plea here today. Is that your understanding? PETITIONER: Yes."); *see also* Plea Tr. at 7 ("THE COURT: Lastly from me at this time, are you waiving your right to appeal? By that I mean this case—these two cases are being concluded, ended, on this court level today. You're waiving right to appeal to any higher court. Is that your understanding?"PETITIONER: Yes.").) Therefore, it is clear that petitioner consented to the waiver and that the attorney was not acting without his knowledge. Although petitioner's failure to show deficient performance would dispose of his ineffective assistance claim, the Court also finds that any alleged deficiencies in his trial counsel's performance did not result in prejudice to petitioner's case. Since petitioner himself consented, in open court, to a plea agreement by which he waived his right to appeal, it can hardly be said that he would not have pled guilty but for the alleged error. Therefore, it cannot be said that petitioner was prejudiced by his trial counsel's performance. In sum, petitioner's ineffective assistance claim fails on the merits.

### 3. Defective Indictment

**\*11** Petitioner also claims that the grand jury indictment was factually insufficient to establish the crime charged, and therefore defective, because "defendant never had no weapon." [10] (Petition at 9.) However, respondent correctly notes that the indictment satisfied the basic requirements of due process by informing petitioner of the time, place and

essential elements of his crime and, moreover, tracked the language of the statute allegedly violated. *See Edwards v. Mazzuca,* No. 00 Civ. 2290(RJS)(KNF), 2007 WL 2994449, at \*5 (E.D.N.Y. Oct. 15, 2007) ("Challenges to state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime.") (internal citations and quotations omitted); *see also Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y.1988) ("[C]onstitutional standards ... ensure a defendant the opportunity to prepare a sufficient defense by requiring that an indictment inform the accused, in general terms, of the time, place and essential elements of the alleged crime."). As set forth below, even assuming *arguendo* that there was a factual basis for this claim, that claim fails on the merits because the purported grand jury defect does not provide a basis for habeas relief.

As a threshold matter, alleged defects in a state grand jury proceeding generally cannot provide grounds for habeas relief. *See, e.g., Dwyer v. Duval,* 23 F.3d 394, 394 (1st Cir.1994) (rejecting habeas claim based on invalidity of a conviction due to lack of seal on indictment); *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (finding that claims brought in a state grand jury proceeding are not cognizable in a collateral attack brought in federal court); *Norwood v. Hanslmaier,* No. 93 Civ. 3748(NG), 1997 WL 67669, at \*2 (E.D.N.Y. Feb.11, 1997) (finding that denial of defendant's right to testify in the grand jury and lack of foreperson's signature on indictment did not raise federal constitutional claims). Moreover, given petitioner's subsequent guilty plea to two counts of Robbery in the First Degree (which he has failed to demonstrate was not made knowingly and voluntarily), any alleged defects in the grand jury process cannot serve as grounds for habeas relief. *See, e.g., Whitehurst v. Senkowski,* 485 F.Supp.2d 105, 117 (N.D.N.Y.2007) (holding that if a guilty plea is valid, petitioner is precluded "from now challenging the legality of events that occurred prior to the entry of that plea ... including his habeas claims that the prosecution improperly used statements he made to law enforcement agents to secure the Indictment, or which otherwise argue that the evidence presented to the grand jury to obtain that accusatory instrument was illegally tainted") (citation and quotation marks omitted); *Crispino v. Allard,* 378 F.Supp.2d 393, 414 (S.D.N.Y.2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived."). Accordingly, any alleged defects in the grand jury process do not provide grounds for habeas relief in this case.

### 4. Insufficient Allocution

**\*12** Petitioner alleges that the plea allocution on May 18, 2004 is factually insufficient to satisfy the necessary elements of Robbery in the First Degree because "the court failed to inquire whether he actually possessed a dangerous instrument at the time of the crime."(Petition at 2.) New York State Penal Law Section 160.15 provides, in part, that:

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

(3) uses or *threatens* the immediate use of a dangerous instrument.

*Id.* (emphasis added). As discussed supra, the petitioner clearly stated during his plea allocution that, on each occasion for which a charged was levied in court, he passed the bank employee a note stating: "I got a gun, if you give me a[dye] pack I'll kill you."(Plea Tr. at 8–9.) Petitioner's admission that he threatened the immediate use of a dangerous instrument— a gun—to the bank teller, regardless of whether he actually possessed one, and his notification that he would kill the teller should he attempt to give him a dye pack to mark the money, clearly satisfies the statute. In short, petitioner allocuted to his threatened use of a deadly instrument in both instances where he forcibly stole money. Therefore, his plea allocution was sufficient under New York law and did not violate any constitutional standards. Thus, this claim does not provide a basis for *habeas* relief and is without merit.

### 5. Double Jeopardy

Petitioner finally argues that his sentence of two concurrent terms of imprisonment of twelve years plus five years of post-release supervision for two counts of first-degree robbery violates his Fifth Amendment protection against double jeopardy. Specifically, he submits that he was sentenced for the same crime twice and will be doubly punished by the imposition of post-release supervision after his release. The Double Jeopardy Clause of the Fifth Amendment ensures that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."U.S. Const. amend. V. This right protects, among other things, against multiple punishments for the same offense. *McCullough v. Bennett,*

413 F.3d 244, 246 (2d Cir.2005) (citing *North Carolina v. Pearce,* 395 U.S. 711 (1969)).

The Supreme Court has distinguished between a statute that punishes a continuous offense and one that punishes distinct acts when two acts violate the same statute, as in the pending case. *See Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (two drug sales to the same person on different days punishable as separate offenses). The Court focused its inquiry on the intention of lawmakers to criminalize each act." 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty.'"*Id.* (quoting WHARTON'S CRIMINAL LAW § 34 n. 3 (11th ed.1912)); *compare Mansfield v. Champion,* 992 F.2d 1098 (10th Cir.1993) (one offense for stealing both money belonging to one victim and money belonging to a store) *with United States v. Farmigoni,* 934 F.2d 63 (5th Cir.1991) (two offenses for using fraudulent letter of credit to defraud two banks).

**\*13** As stated *supra,* Swanton had two distinct goals, which he carried out in two distinct actions; he robbed two separate banks on two separate dates, and each act was exclusive of the other. Petitioner had a distinguishable *actus reus* and *mens rea* in each action, clearly separating the two robberies. Moreover, the sentence of five years of post-release supervision, in addition to two concurrent twelve year terms of imprisonment, was a part of the plea bargain agreed to by the petitioner during the sentencing hearing. (Sentencing Tr. at 4–5.) "[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings."*Hudson v. United States,* 522 U.S. 93, 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (internal quotations and citations omitted). The imposition of post-release supervision does not constitute a separate punishment for either count to which petitioner pled guilty; it represents one part of the sentence as a whole. Furthermore, the sentence was entered at one hearing; he was not sentenced to the imprisonment and post-release supervision at successive hearings. Therefore, the Court finds that petitioner's sentence comports with constitutional standards, rendering his double jeopardy claim meritless.

### IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied in its entirety as time-barred. Moreover, all claims raised therein are procedurally barred/defaulted and, in any event, fail on the merits. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. In short, none of petitioner's claims have merit.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1406969

Footnotes

1   The Court notes that petitioner's argument regarding insufficient allocution was not listed on the petition form in the "grounds" section, as were his remaining claims. However, in an abundance of caution, the Court will review the merits of that claim herein.

2   Petitioner asserts that he filed a N.Y. C.P.L. § 440.10 motion to vacate his sentence before the trial court on September 29, 2006, which was denied on that same date. The Court has no evidence beyond petitioner's assertion indicating that such a motion was filed. However, even assuming *arguendo* that this motion was filed, it would not toll the statute of limitations so as to render the instant petition timely (as discussed *infra* ), because petitioner represents that the motion was decided on the same day that it was filed. (*See* Petition at 4.)

3   Although the petition was filed in the Clerk's office on September 26, 2007, the Court deems the petition filed on September 20, 2007, the date on which it was signed. See *Houston v. Lack,* 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that the notice of appeal of a *pro se* incarcerated litigant is deemed filed when delivered to prison officials for mailing); *see also Noble v. Kelly,* 246 F.3d 93, 98 (2d Cir.2001) (concluding "that the district court properly extended the prison mailbox rule to petitions for writs of *habeas corpus*" ).

4   As stated *supra,*"[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation," 28 U.S.C. § 2244(d) (2), and, therefore, if petitioner did file a § 440.10 motion between July 20, 2006 and July 20, 2007, the limitations period would toll during the pendency of that motion. However, petitioner represents that such a motion was filed on September 29, 2006 and denied on that same date. Accordingly, since petitioner represents that not a single day passed during the pendency of that purported motion, the statute is not tolled and the proper deadline for the filing of the instant petition remains July 20, 2007, one year after his time to seek direct review by the Supreme Court expired.

5   Petitioner did submit a document entitled "Proceedings For Commitment of a Mentally Ill Inmate To a State Hospital for the Mentally Ill, In The State Office of Mental Health," dated February 7, 2008 and signed by Justice Samuel D. Hester of the Supreme Court of the State of New York, Oneida County, ordering that petitioner remain at the Central New York Psychiatric Center in Marcy, New York for a period not to exceed six months, upon the application and certification of Donald Sawyer, Ph.D., dated January 30, 2008. (*See* Petitioner's Opposition at 6.) However, this document does not describe petitioner's alleged infirmity, nor does it detail the time period in which he was allegedly suffering from it. Moreover, even if the document had demonstrated that petitioner was, in fact, mentally ill, and that he had been during the relevant time period, *i.e.,* between July 20, 2006 and July 20, 2007, petitioner fails to explain how the alleged infirmity that led to this Order specifically prevented him from filing his petition in a timely manner. Accordingly, this document is wholly inadequate to substantiate petitioner's argument for equitable tolling.

6   Petitioner raised his claim of insufficient allocution in his direct appeal, but the Appellate Division deemed the claim unpreserved for appellate review based on petitioner's failure "either to move to withdraw his plea on this ground before the imposition of sentence or to vacate the judgment pursuant to CPL 440 .10."*People v. Swanton,* 27 A.D.2d 591, 591 (N.Y.App.Div.2006) (citing N.Y. C.P.L. § 470.05). It is well-settled that a petitioner's federal claim may be procedurally barred from habeas review if it was decided at the state level on "adequate and independent" procedural grounds. *See Coleman v. Thompson,* 501 U.S. 722, 729–33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question."*Garcia v. Lewis,* 188 F.3d 71, 77 (2d

Cir.1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id. at 263* (internal quotations omitted). Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia,* 188 F.3d at 78 (citing *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989)). The Court finds that the decision of the Appellate Division meets the aforementioned requirements and, therefore, its determination that petitioner's claim was procedurally barred forecloses its review by this Court. *See Peterson v. Scully,* 896 F.2d 661, 663 (2d Cir.1990) (internal citation omitted) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with ... a 'contemporaneous objection' rule [Section 470.05], a federal court generally may not consider the merits of the constitutional claim on habeas corpus review."); *see also Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994) (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Lawreth v. Conway,* 493 F.Supp.2d 662, 668–69 (W.D.N.Y.2007) (finding claim procedurally defaulted because "[i]n New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction."). However, for reasons stated *infra,* petitioner's claim of insufficient allocution would, in any event, fail on the merits.

7    Moreover, as stated *infra,* the entirety of petitioner's unexhausted claims were reviewable from the record and, therefore, he is now foreclosed from raising them collaterally, pursuant to N.Y. C.P.L. §§ 440.10 or 440.30. *See Christodoulou v. Duncan,* No. 99 CV 1847(ARR), 2005 WL 990999, at *5 (E.D.N.Y. Apr.14, 2005) (collateral review not available for claims reviewable from the record).

8    Specifically, at the plea hearing, the trial court asked petitioner: "Have any threats been made to you by anyone in order for you to have entered a plea of guilty to these two robbery charges?"(Plea Tr. at 6.) Petitioner answered, "No, sir," at which time the trial court then asked: "Any threats by the police department, assistant district attorney, your attorney, the Court or anyone else?"(Plea Tr. at 7.) Petitioner again replied, "No, sir ." (Plea Tr. at 7.) The trial court then asked: "Are you pleading guilty of your own free will?" and petitioner replied that he was. (Plea Tr. at 7.)

9    Furthermore, the Court notes that the plea offer extended by the trial court was lower than the Assistant District Attorney's offer. After acknowledging that the prosecution offered a sentence of 15 years on both counts of robbery, with time to run concurrently, the trial court reinstated an offer of 12 years on both counts of robbery, with time to be served concurrently, which petitioner accepted. (Plea Tr. at 2, 5, 7.)

10   Petitioner also asserts, related to this claim, that the arresting police officers used an unnecessary amount of force, breaking four of petitioner's ribs, in an effort to coerce him into signing statements against his will. However, petitioner has failed to present any evidence substantiating this allegation. Moreover, at the plea hearing, the trial court specifically asked the petitioner if "[a]ny threats [were made] by the police department, assistant district attorney, your attorney, the Court or anyone else?"(Plea Tr. at 7.) Petitioner repeatedly answered that he was not threatened or coerced, and did not inform the trial court of any physical abuse that he allegedly suffered. As stated *supra,* statements made by a defendant at his allocution hearing carry a "strong presumption of verity" and, therefore, a district court may properly reject unsupported allegations made by that defendant at a later date that contradict statements made under oath. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992). It is not the province of this Court to now doubt the veracity of statements petitioner made at his plea allocution with nothing more by way of proof than petitioner's after-the-fact, self-serving allegations of coercion. Accordingly, petitioner's claims of duress and coercion related to alleged police battery, even if not procedurally barred, are without merit.

---

1999 WL 714349
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

David TORRES, Petitioner,

v.

David MILLER, Superintendent of
Eastern Correctional Facility, Respondent.

No. 99 Civ. 0580 MBM.

|

Aug. 27, 1999.

**Attorneys and Law Firms**

David Sostre Torres, Eastern Correctional Facility,
Napanoch, NY, for Plaintiff's, pro se.

Shelly A.R. Chichester, Asst. District Attorney, Appeals
Bureau, Bronx, NY, for Defendant's.

### ORDER

MUKASEY, J.

**\*1** The above-captioned case was referred to Magistrate
Judge Peck on March 30, 1999 to issue a report and
recommendation ("report") as to petitioner David Torres'
application pursuant to 28 U.S.C. § 2254. Magistrate Judge
Peck filed his report describing the reasons why the petition
should be dismissed as time-barred, and sent it to the parties
on July 8, 1999. As of this date petitioner has neither
submitted any objection to the report nor requested an
extension of time in which to do so. Accordingly, the Court
finds that the report is not facially erroneous, and affirms and
adopts it. Therefore, the writ of habeas corpus is denied and
the petition is dismissed. No certificate of appealability will
issue.

### REPORT AND RECOMMENDATION

PECK, Magistrate J.

Petitioner David Sostre Torres seeks a writ of habeas
corpus, pursuant to 28 U.S.C. § 2254, from his January
5, 1993 conviction, by his guilty plea, of second degree
assault and sentence of six years to life as a mandatory

persistent felony offender. (Pet. ¶¶ 1–5; *see* Affidavit of
ADA Shelly A.R. Chichester, ¶ 4; 12/8/92 Plea Tr.; 1/5/93
Sentence Tr.) Torres's habeas petition alleges that (1) his plea
was involuntary because he was "mentally unbalance[d],"
"legally blind" (Pet.¶ 12(A)) and coerced into pleading guilty
(Pet.¶ 12(C)), (2) his guilty plea and conviction violate the
Americans with Disabilities Act (Pet.¶ 12(A)), (3) the Bronx
District Attorney's office maliciously prosecuted him, (4) the
state plea and sentencing judge was "prejudice[d] to a legally
blind man"(*id.*), (5) Torres was denied effective assistance
of counsel (Pet.¶ 12(B)), and (6) his conviction constitutes
double jeopardy (Pet.¶ 12(C)).

For the reasons set forth below, I recommend that the Court
dismiss Torres's petition as barred by the one-year statute of
limitations imposed by the Antiterrorism and Effective Death
Penalty Act ("AEDPA").

### *PROCEDURAL BACKGROUND*

On December 8, 1992, after being found competent by court
appointed psychiatrists, and after lengthy plea negotiations,
Torres pleaded guilty to second degree assault with an agreed
upon sentence of six years to life as a predicate felony
offender. (12/8/92 Plea Tr. at 2–5, 10–11; *see* Pet. ¶¶ 1–5;
Chichester Aff. ¶ 4 & Exs. 1–2.) Torres admitted that on
August 18, 1991, he assaulted and stabbed his brother-in-law
on the Grand Concourse in the Bronx. (12/8/92 Plea Tr. at 5,
10–11.) On January 5, 1993, Torres was sentenced, as agreed,
to six years to life. (1/5/93 Sentence Tr. at 1–5; *see* Pet. ¶¶ 2–
3; Chichester Aff. ¶ 4 & Ex. 2.)

Torres filed a notice of appeal, but by stipulation dated
September 20, 1993, agreed to withdraw his appeal with
prejudice. (Chichester Aff. ¶ 5 & Ex. 3: 9/20/93 Stip.) The
First Department accepted the stipulation and dismissed the
appeal on October 14, 1993. (Chichester Aff. ¶ 5 & Ex. 4:
10/14/93 1st Dep't Order.) *SeePeople v. Torres,* 197 A.D.2d
940, 603 N.Y.S.2d 937 (1st Dep't 1993) (table).

**\*2** According to Torres's February 4, 1999 affidavit in
support of his current petition, he filed a federal habeas
petition in this Court in 1993 or 1994, which was dismissed
without prejudice for failure to exhaust in state court. (Torres
2/4/99 Aff. at p. 1;*see* Chichester Aff. ¶ 6.) [1]

On July 31, 1994, Torres brought a motion in Supreme Court,
Bronx County, pursuant to CPL § 440.10, alleging that his

confession was coerced and involuntary and that he received ineffective assistance of counsel in connection with his plea. (Chichester Aff. ¶ 7 & Exs. 6 & 8: Torres 7/31/94 § 440.10 motion papers.) In a decision dated January 23, 1995 and filed March 7, 1995, the trial court denied Torres's motion, holding that Torres "failed to set forth any sworn allegation of fact in support of his motion."(Chichester Aff. Ex. 9: 3/7/95 Order; *see also* Chichester Aff. ¶ 8; Torres 2/4/99 Aff. at pp. 1–2.)On May 18, 1995, the First Department denied Torres's application for leave to appeal from the denial of his § 440.10 motion. (Chichester Aff. ¶ 9 & Ex. 10: 5/18/95 1st Dep't Order.)

On November 19, 1996, Torres filed a second state collateral proceeding, pursuant to CPL § 440.10 and § 440.20, asserting ineffective assistance of counsel (for counsel's failure to file CPL § 440 motions) and that his sentence was excessive. (Chichester Aff. ¶ 10 & Ex. 11: Torres 11/19/96 motion papers.) According to Torres, on or about November 28, 1997, he received from the state court clerk a copy of a July 28, 1997 decision denying his November 1996 CPL § 440 motion. (*See* Chichester Aff. ¶ 11 & Ex. 13: Torres 12/11/97 letter to ADA; Torres 2/4/99 Aff. at p. 2; Pet. ¶ 17.) It appears that Torres did not seek leave to appeal that decision to the First Department. (Chichester Aff. ¶ 11.)

### Torres's Present Federal Habeas Petition

Torres's present habeas petition is dated November 19, 1998 and was received by the Court on November 30, 1998. (Dkt. No. 2: Pet. at first & last pages.) Torres's habeas petition alleges that (1) his plea was involuntary because he was "mentally unbalance[d]," "legally blind" (Pet.¶ 12(A)) and coerced into pleading guilty (Pet.¶ 12(C)), (2) his guilty plea and conviction violate the Americans with Disabilities Act (Pet.¶ 12(A)), (3) the Bronx District Attorney's office maliciously prosecuted him, (4) the state plea and sentencing judge was "prejudice[d] to a legally blind man"(*id.*), (5) Torres was denied effective assistance of counsel (Pet.¶ 12(B)), and (6) his conviction constitutes double jeopardy (Pet.¶ 12(C)).

By Order dated January 27, 1999, Chief Judge Griesa directed Torres to show cause why his petition was not time barred by the AEDPA's one-year statute of limitations. (Dkt. No. 3: 1/27/99 Order.) In response, Torres submitted an affidavit dated February 4, 1999 which referred to his prior habeas petition and his state collateral attacks pursuant to CPL § 440, but did not directly address the AEDPA statute of limitations issue. Rather, Torres asked that the Court "have mercy"

on him and because of his "temporary insanity," allow the petition to proceed. (Dkt. No. 4: Torres 2/4/99 Aff. at pp. 2– 3.)

**\*3** By ADA Chichester's affidavit dated June 25, 1999 and accompanying brief, the State has moved to have the petition dismissed or denied, on the ground, *inter alia,* that it is time barred by the AEDPA's one-year statute of limitations. [2]

### *ANALYSIS*

The State has moved to dismiss Torres's petition as untimely under the AEDPA's one-year statute of limitations. The Court agrees that the petition is untimely.

### I. *THE AEDPA'S STATUTE OF LIMITATIONS BARS TORRES'S PETITION*

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act. The AEDPA instituted a one-year state of limitations for habeas corpus petitions filed after April 24, 1996:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

....; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Because Torres's direct appeal to the First Department was withdrawn by stipulation on October 14, 1993 (Chichester Aff. ¶ 5 & Exs. 3–4), before enactment of the AEDPA, Torres had a full year from the April 24, 1996 enactment of the

AEDPA to file his habeas petition. *E.g.,Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998).

**A. *State Collateral Attacks as Tolls***

While there appears to be a split of authority within the Southern District as to whether state collateral attacks toll the one-year statute of limitations under *Ross v. Artuz* for convictions that became final before April 24, 1996, the weight of authority clearly supports application of the § 2244(d)(2) toll to the *Ross v. Artuz* limitations period. *See,e.g.,DeVeaux v. Schriver,* 98 Civ. 7563, slip op. at 8 & n. 3 (S.D.N.Y. April 29, 1999) (Peck, M.J.); *Varsos v. Portuondo,* 98 Civ. 6709, slip op. at 4 & n. 1 (S.D.N.Y. April 12, 1999) (Peck, M.J.).[3] The Court believes it likely that the Second Circuit will join the other Circuits that have addressed the issue and hold that state collateral attacks do toll the *Ross* one-year statute of limitations,[4] but this Court need not decide that question here, however, because even if collateral attacks toll the *Ross v. Artuz* one-year after April 24, 1996 limitations period, Torres's petition is still untimely.

Section 2244(d)(2) does not state that the AEDPA's one-year statute begins to run anew after decision on a state collateral attack; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year state of limitations by bringing a belated state collateral attack. *See,e.g.,Hamilton v. Miller,* No. 98 CV 5669, 1999 WL 438472 at [*]3 (E.D.N.Y. May 18, 1999); *DeVeaux v. Schriver,* slip op. at 8; *Varsos v. Portuondo,* slip op. at 4; *Smith v. McGinnis,* No. CV 98–1034, 1999 WL 312121 at [*]3–4 (E.D.N.Y. March 17, 1999); *Cromwell v. Keane,* 33 F.Supp.2d 282, 285 (S.D.N.Y.1999) (Rakoff, D.J. & Peck, M.J.).

**\*4** Rather, § 2244(d)(2) merely excludes the time a collateral attack is under submission from the calculation of the one-year statute of limitations. *See,e.g.,Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir.1998) ("Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one year period of limitation."); *DeVeaux v. Schriver,* slip op. at 8; *Broom v. Garvin,* 99 Civ. 1083, 1999 WL 246753 at [*]1 (S.D.N.Y. April 26, 1999) ("[T]he filing of a collateral attack in the state court tolls the AEDPA statute of limitations during the period that it is pending, but it does not commence a new limitations period."); *Hamilton v. Miller,* 1999 WL 438472 at [*]3; *Smith v. McGinnis,* 1999 WL 312121 at [*]3–4; *Varsos v. Portuondo,* slip op. at 4–5; *Brooks v. Artuz,* 98 Civ. 4449, 1999 WL 138926 at [*]2 (S.D.N.Y. March 15, 1999) (" 'The tolling provision [in 28 U.S.C. 2244(d)(2) ] does not ... "revive" the limitations period (*i.e.,* restart the clock at zero); it can only serve to pause a clock that has not yet fully run.' ") (quoting *Rashid v. Kuhlman,* 991 F.Supp. 254, 259 (S.D.N.Y.1998)); *Cowart v. Goord,* 98 Civ. 3864, 1998 WL 65985 at [*]2 (S.D.N.Y. Feb. 18, 1998) (Sotomayor, D.J.) ("the filing of a proper state collateral petition does serve to toll (but not start anew) the AEDPA statute of limitations"); *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997) (petitioner's statute of limitations period was suspended only during the period state collateral motions were pending, and began to run again, but not anew, when the state collateral motions were decided).

Torres's state collateral attacks decided prior to April 24, 1996 are irrelevant to calculation of the AEDPA statute of limitations period. Torres's only state collateral attack after April 24, 1996 was filed on November 19, 1996, denied by the trial court on July 28, 1997, and Torres learned of that decision on or about November 28, 1997. (Chichester Aff. ¶¶ 10–11 & Exs. 11, 13.) Assuming arguendo that the toll extends until Torres learned of the decision (an issue the Court need not resolve here), Torres would be entitled to a toll for the period from November 19, 1996 to November 28, 1997, which is 374 days.

Torres's present habeas petition is dated November 19, 1998 and was received by the Court on November 30, 1998. A pro se prisoner's papers are considered filed when they are handed over to prison officials for forwarding to the court. *See,e.g.,Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382 (1988); *Dory v.. Ryan,* 999 F.2d 679, 681–82 (2d Cir.1993); *Torres v. Irvin,* 33 F.Supp.2d 257, 270 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.); *Concepcion v. Portundo,* 97 Civ. 3183, 1998 WL 42568 at [*]2 n. 1 (S.D.N.Y. Feb. 4, 1998); *Brooks v. Artuz,* 97 Civ. 3300, 1998 WL 42567 at [*]1 n. 2 (S.D.N.Y. Feb. 4, 1998); *Covington v. City of New York,* 916 F.Supp. 282, 286 (S.D.N.Y.1996) (Scheindlin, D.J. & Peck, M.J.). Absent evidence to the contrary, to give Torres the benefit of the doubt, the Court assumes for purposes of this opinion that Torres gave his petition to prison officials for mailing on the date he signed it, November 19, 1998. *See,e.g.,Torres v. Irvin,* 33 F.Supp.2d at 270; *Hunter v. Kuhlmann,* 97 Civ. 4692, 1998 WL 182441 at [*]1 n. 2 (S.D.N.Y. April 17, 1998) (deeming petition filed on date on which petitioner signed it); *Hughes v. Irvin,* 967 F.Supp. 775,

778 (E.D.N.Y.1997); *Jones v. Artuz,* No. 97 CV 97–2394, 1997 WL 876735 at *1 (E.D.N.Y. Sept. 13, 1997). That date is 939 days after the April 24, 1996 enactment of the AEDPA. The toll of 374 days still leaves Torres's petition untimely by 200 days.

## II. *TORRES'S PHYSICAL AND MENTAL AILMENTS ARE NOT SUFFICIENT TO ENTITLE HIM TO AN EQUITABLE TOLLING OF THE AEDPA'S ONE–YEAR LIMITATIONS PERIOD*

**\*5** Torres argues that the Court should have mercy "on him" and allow his petition to proceed because of his "temporary insanity." (Dkt. No. 4: Torres 2/4/99 Aff. at pp. 2–3.)The Court interprets this liberally as a request that the AEDPA's one-year limitations period should be "equitably tolled."

### A. *The AEDPA's One–Year Statute of Limitations May Be Equitably Tolled*

As a general proposition, a time limitations period that is analogous to a statute of limitations is subject to equitable tolling, whereas a time bar which stands as a jurisdictional prerequisite to filing a suit in federal court is not. *See,e.g.,Irwin v. Department of Veteran Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457 (1991); *Zipes v. Trans World Airlines, Inc .,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132 (1982); *Carlyle Towers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp.,* 170 F.3d 301, 306–10 (2d Cir.1999); *In re Benedict,* 90 F.3d 50, 53–54 (2d Cir.1996); *New York v. Sullivan,* 906 F.2d 910, 917 (2d Cir.1990); *Johnson v. AL Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984); *Raynor v. Dufrain,* 28 F.Supp.2d 896, 900 (S.D.N.Y.1998). To determine whether a statutory time period is a jurisdictional requirement or a limitations period subject to equitable tolling, a court must look to "[t]he structure of [the statute], the congressional policy underlying it, and the reasoning of [precedent] cases."*Zipes v. Trans World Airlines, Inc.,* 455 U.S. at 393, 102 S.Ct. at 1132;*accord,e.g.,Carlyle Towers Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp.,* 170 F.3d at 306 (quoting *Zipes* ).

The Second Circuit has yet to determine whether the AEDPA's one-year limitations period may be equitably tolled. [5] The vast majority of courts that have addressed the issue have held that the AEDPA's one-year time period is only a limitations period, analogous to a statute of limitations, rather than a jurisdictional bar, and thus subject to equitable tolling. These courts have found that the language, legislative history and purpose of the AEDPA, along with the structure of the habeas corpus statute (namely, that the one-year limitations period does not appear in § 2241, the provision which confers habeas jurisdiction to the federal courts) and prior precedent of the Supreme Court, compel this conclusion. *See,e .g.,Sandvik v. United States,* No. 97–5891, 1999 WL 390517 at *1–2 (11th Cir. June 15, 1999) (finding that the analogous one-year limitation under § 2255 is "garden-variety statute of limitations, and not a jurisdictional bar that would escape equitable tolling" based on language of statute, shared "legislative history" with § 2244 which "makes clear that both statutes were intended to be ordinary statutes of limitation and not jurisdictional bars," and limitations section is "divorced from the portion of the statute granting the district court authority to conduct post-conviction review"); *Moore v. United States,* 173 F .3d 1131, 1134 (8th Cir.1999) ("Congress's intent, as reflected in the statute's language, purpose and legislative history" shows that "the time limit was intended to be a period of limitations, subject to equitable tolling, rather than a jurisdictional bar."); *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998) ("The Supreme Court has held that limitations periods with even more limiting language than the AEDPA provision could be equitably tolled ... [and] AEDPA's statutory language and construction clearly evinces a congressional intent to impose a one-year statute of limitations for the filing of federal habeas claims by state prisoners.... As such, in rare and exceptional circumstances, it can be equitably tolled."), *cert. denied,*119 S.Ct. 1474 (1999); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618–19 (3d Cir.1998) (the structure of the habeas corpus statute and the "language [,] ... legislative history ... [and] statutory purpose of AEDPA" leads to the conclusion "that Congress intended the one-year period of limitation to function as a statute of limitations, and thus be subject to equitable tolling" in extraordinary cases); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.1998) ( "It must be remembered that § 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling," citing *Calderon,* below), *cert. denied,*119 S.Ct. 210 (1998); *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1288–89 (9th Cir.1997) ("[B]oth the Supreme Court and this court have repeatedly held that timing provisions even more unyieldingly phrased than AEDPA's are statutes of limitations subject to tolling."), *vacated on other grounds,*163 F.3d 530 (9th Cir.1998); *United States v. Griffin,* No. 99 C 1611, 1999 WL 376086 at *6 (N.D. Ill. June 8, 1999); *Rhodes v. Senkowski,* 98 Civ. 2221, slip op. at 8–10 (S.D.N.Y. April 23, 1999) (Peck, M.J.); *McDade v. Brigano,* No. C–3–98–514, 1999 WL 126428 at *2 (S.D.Ohio March 8, 1999) ("The language and legislative

history of the AEDPA establish that § 2244(d) was intended as a limitations period and not a jurisdictional bar ... [and thus] the AEDPA limitations period is subject to equitable tolling."); *Raynor v. Dufrain,* 28 F.Supp.2d at 900 ("because the [AEDPA] statute of limitations is not a jurisdictional bar, a court may choose to afford a petitioner equitable tolling ... [but] only in 'extraordinary circumstances' '); *Fadayiro v. United States,* 30 F.Supp.2d 772, 779, (D.N.J.1998) ("The limitations period in the AEDPA has been interpreted as a statute of limitations which is amenable to equitable tolling, rather than a jurisdictional bar which precludes equitable modification."); *Stang v. Smith,* 23 F.Supp.2d 972, 973 (E.D.Wisc.1998); *Hernandez v. United States,* No. Civ. A. 94–60, 1998 WL 552942 at *6 (D.Del. Aug. 13, 1998); *Henderson v. Johnson,* 1 F.Supp.2d 650, 653–54 (N.D.Tex.1998); *Parker v. Bowersox,* 975 F.Supp. 1251, 1252 (W.D.Mo.1997). [6]

**\*6** This Court agrees with the reasoning and the conclusions reached by virtually every court that has considered this issue, and holds that the AEDPA's one-year limitations period is subject to equitable tolling in appropriate circumstances. *See also Rhodes v. Senkowski,* slip op. 8.

However, "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Court,* 128 F.3d at 1288; *accord, e.g., Sandvik v. United States,* 1999 WL 390517 at *2 ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."); *Paige v. United States,* 171 F.3d 559, 561 (8th Cir.1999); *United States v. Griffin,* 1999 WL 376086 at *6–7; *Rhodes v. Senkowski,* slip op. at 10; *McDade v. Brigano,* 1999 WL 126428 at *2; *Chavez v. Mueller,* No. C. 98–3070, 1999 WL 115431 at *2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa,* 33 F.Supp.2d 1269, 1273 (D.Haw.1999); *Raynor v. Dufrain,* 28 F.Supp.2d at 900; *United States v. Espinoza–Godinez,* 11 F.Supp.2d 1210, 1214 (D.Or.1998); *Henderson v. Johnson,* 1 F.Supp.2d at 653–54 (also adopting a list of seven "nonexclusive factors to assist in deciding whether a prisoner has met the high tolling standard"); *United States v. Muldrow,* No.Crim. A. 98–20063, 1998 WL 351574 at *2 (D. Kan. June 16, 1998). [7] The burden is on the petitioner— here, Torres—to make such a showing, and federal courts are

to "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Calderon v. United States Dist. Court,* 128 F.3d at 1289; *see, e.g., Rhodes v. Senkowski,* slip op. at 10–11; *McDade v. Brigano,* 1999 WL 126428 at *2; *Eisermann v. Penarosa,* 33 F.Supp.2d at 1273; *see also, e.g., Braham v. State Ins. Fund,* 97 Civ. 7121, 1999 WL 14011 at *3 (S.D.N.Y. Jan. 14, 1999) (Cote, D.J.) ("A [Title VII] plaintiff seeking to toll the statute of limitations on equitable grounds such as illness bears the burden to show that the limitations period should be extended.") (citing *Hedgepeth v. Runyon,* 96 Civ. 1161, 1997 WL 759438 at *4 (S.D.N.Y. Dec. 10, 1997) (citing *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992))).

### B. *Torres Is Not Entitled to Equitable Tolling*

Torres alleges he is legally blind and "temporarily insane." (*E.g.,* Pet. ¶ 12(A)-(B).)

It appears, based on the Court's research, that very few courts have addressed the issue of whether a petitioner's physical and/or mental illness can toll the AEDPA's one-year limitations period. *See Fisher v. Johnson,* 174 F.3d 710, 715–16 (5th Cir.1999) (while "recogniz[ing] the possibility that mental incompetency might support equitable tolling of a limitations period," court found that petitioner's "brief period of incapacity [in a mental ward] during a one-year statute of limitations, even though rare, does not necessarily warrant equitable tolling" in light of fact that petitioner "still had over six months to complete his federal habeas petition after his return to his usual quarters"); *Calderon v. United States Dist. Court for the Central Dist.,* 163 F.3d 530, 541 (9th Cir.1998) ("petitioner's mental incompetency—a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control—renders the petitioner unable to assist his attorney in the preparation of a habeas petition," and therefore served to equitably toll the AEDPA's statute of limitations until after the district court made a competency determination where there had been a "threshold showing of mental incompetency"; *Rhodes v.. Senkowski,* 98 Civ. 2221, slip op. at 12 (S.D.N.Y. April 23, 1999) (Peck, M.J.); *Murphy v. Johnson,* No. 97–CV–2889, 1998 U.S. Dist. LEXIS 5878 at *8 (N.D.Tex. Feb. 23, 1998) ("The Court finds that petitioner's [unsupported] claim of bi-polar and manic/depressive behavior does not rise to the level of 'extraordinary circumstances' justifying equitable tolling" of AEDPA limitations period), *report and recommendation*

*adopted,*1998 U.S. Dist. LEXIS 5438 (N.D. Tex. April 9, 1998).

**\*7** In other contexts, courts have found that "[i]llness may be an exceptional circumstance [that can toll a statute of limitations] when it has prevented the party from pursuing her legal rights."*Braham v. State Ins. Fund,* 97 Civ. 7121, 1999 WL 14011 at *3 (S.D.N.Y. Jan. 14, 1999) (Cote, D.J.) (Title VII and ADEA statute of limitations); *see,e.g.,Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir.1991) (equitable tolling of Social Security Act statute of limitations to seek judicial review "may be warranted ... where ... a claimant avers incapacity due to mental impairment during the [limitations] period); *Chalom v. Perkins,* 97 Civ. 9505, 1998 WL 851610 at *6 (S.D.N.Y. Dec. 9, 1998) (recognizing equitable tolling principle in Title VII case but rejecting plaintiff's claim where plaintiff "offer[ed] no evidence of her suggested mental anguish and stress and the extent to which it affected her ability to file within the statutory deadlines"); *Lloret v. Lockwood Greene Eng'rs Inc.,* 97 Civ. 5750, 1998 WL 142326 at *2 (S.D.N.Y. Mar. 27, 1998) (Sotomayor, D.J.) (ADA and ADEA, quoting *Hedgepeth,* below); *Mahoney v. Beacon City School Dist.,* 988 F.Supp. 395, 399 (S.D.N.Y.1997) (Title VII quoting *DeCrosta,* below); *Hedgepeth v. Runyon,* 96 Civ. 1161, 1997 WL 759438 at *4–5 (S.D.N.Y. Dec. 10, 1997) (to receive tolling of Title VII statute of limitations based on illness, plaintiff " 'bears the burden' ' to show that " 'disability [was] of such a nature that plaintiff [was] unable to manage his business affairs and [was] incapable of comprehending and protecting his legal rights and liabilities," ' relying on New York law); *Pauling v. Secretary of Dept. of Interior,* 960 F.Supp. 793, 804 n. 6 (S.D.N.Y.1997) (Cote, D.J.) (tolling Title VII limitations period inappropriate where plaintiff, who claimed a " 'major depressive episode," ' failed to show that "he was too ill to comprehend his rights and to file a complaint"), *vacated on other grounds,*160 F.3d 133 (2d Cir.1998); *Wenzel v. Nassau County Police Dep't,* No. CV–93–4888, 1995 WL 836056 at *3 (E.D.N.Y. Aug. 5, 1995) (§ 1983: "apathy, depression, posttraumatic neurosis, psychological trauma and depression therefrom, or mental illness alone have been held to be insufficient to invoke the tolling provisions of New York law; "[r]ather, the mental disability must be 'severe and incapacitating.' "); *Sanders v. Kiley,* 91 Civ. 6320, 1995 WL 77916 at *4, *6 (S.D.N.Y. Feb. 23, 1995) ("plaintiff has submitted no evidence to support the view that the conditions that afflicted plaintiff— depression and headaches—encompass the degree of mental

incapacity required by New York law to toll a statute of limitations period"; "courts need not credit wholly conclusory assertions" such as plaintiff's assertion that he was " 'insane' '); *Berry v. United States,* 93 Civ. 8652, 1995 WL 33284 at *2 (S.D.N.Y. Jan. 27, 1995) (tolling Title VII statute of limitations not justified where plaintiff "was not 'unable to protect [her] legal rights because of an over-all inability to function in society' '); *DeCrosta v. Runyon,* No. 90–CV– 585 & 1269, 1993 WL 117583 at *3 (N.D.N.Y. April 14, 1993) (discussing standard for equitably tolling Title VII statute of limitations based on mental illness, relying on New York state law. "The disability must be of such a nature that plaintiff is unable to manage his business affairs and is incapable of comprehending and protecting his legal rights and liabilities."). [8]

**\*8** Using these cases as a guide, this Court believes that Torres's allegations of physical and mental illness fail to meet the high standard necessary to justify an equitable tolling of the AEDPA's one-year limitations period. The mere fact that Torres suffered with physical and mental ailments during the one-year period is insufficient to toll the one-year time period; Torres must show that these medical problems rendered him unable to pursue his legal rights during the relevant time period. *See* cases cited above. The Court finds that Torres has failed to meet his burden on this issue because Torres has not presented sufficient evidence to show that he could not pursue his legal rights throughout the entire one-year period on the basis of his physical and mental problems. Torres's conclusory contentions are simply insufficient to meet his burden. *See,e.g.,Sanders v. Kiley,* 1995 WL 77916 at *6 (plaintiff's "wholly conclusory assertion" that he was " 'insane' ' did not justify tolling of statute of limitations); *O'Connor v. North Am. Phillips Lighting Corp.,* 1989 WL 118224 at *5 ("The plaintiff's evidence of depression and mental incapacity is thus vague and undocumented. As such, it is legally insufficient to toll the statutory filing period...."); *Dumas v. Agency for Child Dev.,* 569 F.Supp. 831, 834 n. 4 (S.D.N.Y.1983) ("Of course, we need not assume the correctness of conclusory assertions such as Dumas' statement that '[t]his affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge." ').

Two pre-plea psychiatric examinations by two different psychiatrists found Torres competent and able to assist in his own defense. (Chichester Aff. Ex. 1.) As to Torres's claim of blindness, the record indicates that he is blind only in his right

eye and has some left eye vision. (*E.g.,* Chichester Aff. Ex. 1.) Torres has not presented any evidence, except his conclusory reference to his legal blindness and "temporary insanity," that his vision or mental state have deteriorated since his late 1991 psychiatric examinations. Indeed, his handwriting on his habeas petition shows that while his vision may be impaired, he is *not* totally blind. And the fact that he has been able to bring pro se collateral proceedings in state court and bring his current federal pro se habeas petition shows that he is not "insane."

Accordingly, Torres's has failed to show that his physical and mental problems rendered him unable to pursue his legal rights and thus has not shown any "extraordinary circumstances" to justify an equitable tolling of the AEDPA limitations period. *See* cases cited above.

In sum, the Court holds that physical or mental illness could toll the AEDPA's one-year time period to file a habeas corpus petition; however, a petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling. A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the one-year time period. The Court is sympathetic to Torres's medical conditions, but his conclusory allegations are simply insufficient to support equitable tolling. "While [petitioner] clearly suffers from a legitimate ... illness, [he] has failed to demonstrate that it disabled [him] to the requisite degree." *Speiser v. U.S. Dep't of Health & Human Servs.,* 670 F.Supp. at 385. Torres's habeas petition is untimely and not subject to equitable tolling.

### *CONCLUSION*

*9 For the reasons set forth above, the Court should dismiss Torres's federal habeas petition as barred by the AEDPA's one-year statute of limitations.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Michael B. Mukasey, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Mukasey. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 714349

---

Footnotes

1    Based on court records, it appears that Torres's current petition is his fourth federal habeas petition. His first petition was filed as of August 3, 1993 and dismissed as premature that same day.(*Torres v. State,* 93 Civ. 5401, Dkt. Nos. 1, 3–4.)His second petition was filed as of July 5, 1994 and dismissed without prejudice by Chief Judge Griesa on the same day for failure to exhaust state remedies.(*Torres v. Superintendent,* 94 Civ. 4881, Dkt. Nos. 2–4.)His third petition was filed as of September 14, 1995 and dismissed without prejudice at his request by Judge Kaplan on May 10, 1996. (*Torres v. Commissioner, State Dep't of Corrections,* 95 Civ. 7863, Dkt. Nos. 1–2.)

2    Because the Court agrees that Torres's petition is time barred, the Court need not address the State's other arguments.

3    *Compare,e.g.,Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir.1998); *Gendron v. United States,* 154 F.3d 672, 675 & n .3 (7th Cir.1998), *cert. denied,* 119 S.Ct. 1758 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir.1998); *Loyasz v. Vaughn,* 134 F.3d 146, 149 (3d Cir.1998); *Brooks v. Greiner,* 97 Civ. 6997, 1999 WL 288787 at [*]2 (S.D.N.Y. May 6, 1999) (Sprizzo, D.J.); *Diaz v. Mantello,* 98 Civ. 3521, 1999 WL 258485 at [*]2 (S.D.N.Y. April 29, 1999) (Sprizzo, D.J.); *Duncan*

*v. Griener,* 97 Civ. 8754, 1999 WL 20890 at [*]3 (S.D.N.Y. Jan. 19, 1999) (Koeltl, D.J.) (tolling provision in 28 U.S.C. § 2244(d)(2) applied to petitioner whose conviction became final before the AEDPA's April 24, 1996 effective date); *Turner v. Senkowski,* No. 97–CV–653, 1998 WL 912011 at [*]2 (W.D.N.Y. Nov. 23, 1998) (tolling *Ross*'s one year after AEDPA enactment period for state collateral review, following *Ioyner* ); *Ioyner v. Vacco,* 97 Civ. 7047, 1998 WL 633664 at [*]2 (S.D.N.Y. Sept. 15, 1998) (Cote, D.J.) (applying collateral motion toll to one year period after AEDPA's enactment); *Davis v. Keane,* 9 F.Supp.2d 391, 392 (S.D.N.Y.1998) (Kaplan, D.J.) (tolling provision in § 2244(d)(2) applied under *Peterson v. Demskie* "reasonable time" doctrine); *Rondon v. Artuz,* 97 Civ. 6904, 1998 WL 182424 at [*]2 n. 2 (S.D.N.Y. April 17, 1998) (Stein, D.J.) (same); *with Cole v. Kuhlmann,* 5 F.Supp.2d 212, 213–14 (S.D.N.Y.1998) (Rakoff, D.J.) (tolling provision in § 2244(d)(2) does not apply where the conviction became final before the AEDPA's effective date; *Cole,* however, was decided under the *Peterson v. Demskie* "reasonable time" doctrine before the 2d Cir.'s *Ross* decision).

4    A single example should suffice to show the need for such a toll. A petitioner whose direct appeal became final on April 25, 1996 would be entitled to a toll for collateral attacks. Why should a petitioner whose direct appeal became final on April 23, 1996, one day before the AEDPA's effective date, not also be entitled to a tolling period while state collateral attacks were pending? If such a petitioner were not entitled to a toll, his collateral attacks might not have been ruled upon before his one year expires, but if he brings a federal habeas petition before his collateral attacks are decided by the state court, his petition would be subject to dismissal for failure to exhaust state remedies.

  The desirability of a collateral attack toll may be less for a prisoner whose direct appeals were concluded long before the AEDPA's enactment, but before the AEDPA, the prisoner had no deadline for bringing a state collateral attack. *Ross v. Artuz*'s rationale for giving the prisoner a full year from the AEDPA's enactment, rather than just a "reasonable time," should also allow the prisoner a toll for any needed state collateral attacks.

  In short, whether considered for an "old" or "recent" conviction, there appears to be good reason to hold that the collateral attack toll also applies during the *Ross v. Artuz* one year after AEDPA enactment time period.

5    The Court notes that, although the Second Circuit has not yet addressed this issue, that court has referred to the one-year limitations period as a "statute of limitations." *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998) ("Effective April 24, 1996, the [AEDPA] introduced for the first time a statute of limitations with respect to the filing of petitions for writs of habeas corpus....").

6    *See also, e.g., Triggs v. Cain,* No. Civ. A. 97–2430, 1999 WL 127249 at [*]1 (E.D.La. March 8, 1999); *Chavez v. Mueller,* No. C 98–3070, 1999 WL 115431 at [*]2 (N.D.Cal. March 4, 1999); *Eisermann v. Penarosa,* 33 F.Supp.2d 1269, 1273 (D.Haw.1999); *Sperling v. White,* 30 F.Supp.2d 1246, 1254 (C.D.Cal.1998); *United States v. Espinoza–Godinez,* 11 F.Supp.2d 1210, 1213 (D.Or.1998); *Thomas v. Straub,* 10 F.Supp.2d 834, 835–36 (E.D. Mich.1998); *United States v. Muldrow,* No. Crim. A. 98–20063, 1998 WL 351574 at [*]2 (D. Kan. June 16, 1998); *Baskin v. United States,* 998 F.Supp. 188, 189 (D.Conn.1998); *but see United States v. Eubanks,* 92 Cr. 392, 1997 WL 115647 at [*]1 (S.D.N.Y. March 14, 1997) (dicta: "The AEDPA provision appears to state a statute of limitations which cannot be waived or modified by the Court.").

7    *See also, e.g., Davis v. Johnson,* 158 F.3d at 811 ("in rare and exceptional circumstances, [AEDPA's one-year limitations period] can be equitably tolled"); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d at 618 ("equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair'; "[g]enerally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights' "); *Fadayiro v. United States,* 30 F.Supp.2d at 779 ("Equitable tolling of the limitations period ... is warranted in limited circumstances."); *Hernandez v. United States,* 1998 WL 552942 at [*]6; *Thomas v. Straub,* 10 F.Supp.2d at 835–36.

8    *See also, e.g., Biester v. Midwest Health Servs., Inc .,* 77 F.3d 1264, 1268 (10th Cir.1996) ("The few courts which have recognized an exception [to Title VII statute of limitations] for mental incapacity have limited the application of this equitable doctrine to exceptional circumstances" such as being "adjudged incompetent or institutionalized."); *O'Connor v. North Am. Phillips Lighting Corp.,* No. 88 C 7426, 1989 WL 118224 at [*]4 (N.D.Ill. Sept. 26, 1989) ("A rare circumstance which can indeed toll the statutory limitation period is where the employee is found to have been mentally incapacitated during the pursuing the filing period, thereby preventing him from pursuing his Title VII rights within the 300 days allotted. "But "plaintiff's evidence of depression and mental incapacity is ... vague and undocumented [and][a]s such, it is legally insufficient to toll the statutory filing period even accepting the allegations as true."); *Speiser v. U.S. Dep't of Health & Human Servs.,* 670 F.Supp. 380, 384 (D.D.C.1986) (to toll Title VII statute of limitations, plaintiff must show that the " 'disability is of such a nature as to show [plaintiff] is unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities" '), *aff'd mem.,* 818 F.2d 95 (D.C.Cir.1987); *Moody v. Bayliner Marine Corp.,* 664 F.Supp. 232, 237 (E.D.N.C.1987) (Title VII statute of limitations should only be tolled when the plaintiff was so incapacitated that he or

she was "incapable of filing any claim within the requisite time periods"); *Bassett v. Sterling Drug, Inc.,* 578 F.Supp. 1244, 1248 (S.D.Ohio 1984) (ADEA statute of limitations may be equitably tolled during time periods where plaintiff "was adjudicated mentally incompetent or institutionalized under a diagnosis of mental incompetence"), *appeal dismissed,* 770 F.2d 165 (6th Cir.1985).

---

**End of Document**                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.